**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-7245**

UNITED STATES OF AMERICA,

　　　　　Plaintiff - Appellee,

　　v.

NICHOLAS RAGIN,

　　　　　Defendant - Appellant.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Robert J. Conrad,
Jr., District Judge.  (3:04-cr-00271-RJC-7; 3:10-cv-00488-RJC)

Argued:  December 10, 2015　　　　　Decided:  March 11, 2016

Before GREGORY and SHEDD, Circuit Judges, and DAVIS, Senior
Circuit Judge.

Vacated and remanded by published opinion.  Judge Gregory wrote
the opinion, in which Judge Shedd and Senior Judge Davis joined.

**ARGUED:**  Matthew Gridley Pruden, TIN, FULTON, WALKER & OWEN,
PLLC, Charlotte, North Carolina, for Appellant.  William Michael
Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North
Carolina, for Appellee.  **ON BRIEF:**  Jill Westmoreland Rose,
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Charlotte, North Carolina, for Appellee.

GREGORY, Circuit Judge:

This appeal presents an issue of first impression in this Circuit: whether a defendant's right to effective assistance of counsel is violated when his counsel sleeps during trial. We hold that a defendant is deprived of his Sixth Amendment right to counsel when counsel sleeps during a substantial portion of the defendant's trial.

The Sixth Amendment guarantees a criminal defendant the assistance of counsel for his defense. U.S. Const. amend. VI. Although generally a defendant must show that his counsel's performance was deficient and prejudicial to prevail on a claim of ineffective assistance of counsel, see Strickland v. Washington, 466 U.S. 668 (1984), in United States v. Cronic, 466 U.S. 648 (1984), the Supreme Court held that there are certain situations where the reliability of a trial becomes so questionable that the defendant need not show that he was actually prejudiced. Instead, prejudice is presumed. We believe that when counsel for a criminal defendant sleeps through a substantial portion of the trial, such conduct compromises the reliability of the trial, and thus no separate showing of prejudice is necessary.

This case presents such a situation. Nicholas Ragin's Sixth Amendment right to counsel was violated not because of specific legal errors or omissions indicating incompetence in

2

counsel's representation but because Ragin effectively had <u>no</u> legal assistance during a substantial portion of his trial. The evidence is not disputed; it demonstrates that counsel was asleep for much of Ragin's trial. As one witness testified, counsel was asleep "[f]requently . . . almost every day . . . morning and evening" for "30 minutes at least" at a time. These circumstances suggest "a breakdown in the adversarial process that our system counts on to produce just results," <u>Strickland</u>, 466 U.S. at 696, and from which we must presume prejudice to Ragin.

We therefore conclude that Ragin was deprived of effective assistance of counsel during his trial, in violation of the Sixth Amendment. Accordingly, we reverse the order denying relief under 28 U.S.C. § 2255 and remand for further proceedings consistent with this opinion.

I.

A.

On October 18, 2004, a grand jury in the Western District of North Carolina returned an indictment that charged Ragin, along with six codefendants, with conspiracy and other substantive offenses related to their involvement in prostitution and drug rings. Following the indictment, the district court appointed Nikita V. Mackey as counsel for Ragin.

3

The grand jury subsequently returned a superseding indictment that charged Ragin with two counts: conspiracy to commit offenses against the United States, including enticing and coercing individuals to travel in interstate commerce to engage in prostitution, interstate transportation of minors to engage in prostitution, and interstate wire transfer of funds in aid of racketeering enterprises, in violation of 18 U.S.C. § 371; and conspiracy to possess with intent to distribute cocaine base and to employ, hire, use, persuade, induce, entice and coerce minors in furtherance thereof, in violation of 21 U.S.C. §§ 841, 846, and 861.

Ragin pleaded not guilty and was tried before a jury along with three of his codefendants, Tracy Howard, David Howard, and Oscar Solano-Sanchez. The trial lasted from April 3 to April 21, 2006, and included testimony from approximately forty witnesses. Of those witnesses, six testified about Ragin's direct involvement in the conspiracy, while the remainder testified about the acts of the other defendants.

At the conclusion of trial, the jury found Ragin guilty on both counts. On June 25, 2006, three months after trial and prior to sentencing, Ragin submitted a handwritten letter to the district court in which he complained about Mackey. Ragin alleged, among other things, that "[Mackey] even had the

4

audacity to fall asleep 'twice' during the trial." Supp. J.A. 790.

At sentencing, the district court calculated a total offense level of 40 and a criminal history category of VI based on Ragin's accumulation of 16 criminal history points, resulting in a guidelines range of 360 months to life in prison. The court sentenced Ragin to 360 months in prison. We subsequently affirmed Ragin's conviction and sentence. United States v. Howard, 309 F. App'x 760 (4th Cir. 2009) (unpublished).

B.

On October 1, 2010, Ragin moved, pursuant to 28 U.S.C. § 2255, to have his conviction and sentence vacated. In the motion, Ragin raised eleven claims for relief, including ten allegations accusing Mackey of providing ineffective assistance of counsel. Ragin's seventh claim was that "[c]ounsel fell asleep during the trial." J.A. 27. Ragin described a single incident during which he "noticed that [Mackey] was sleeping." Id.

In conjunction with his § 2255 motion, Ragin submitted a sworn affidavit elaborating on eight of his ineffective assistance of counsel claims. Consistent with his earlier allegation in his post-trial letter, in paragraph eight of the affidavit, Ragin stated, "Finally counsel fell asleep twice

5

during trial which more than shows his lack of interest and dedication to my case." J.A. 64.

After the government filed a response opposing Ragin's motion, the district court issued an order, concluding that "an evidentiary hearing is necessary to resolve Petitioner's claim that his attorney provided ineffective assistance when he fell asleep during trial." J.A. 113-14.

### C.

At the evidentiary hearing, Ragin called three witnesses, Peter Adolf, Richard Culler, and Pamela Vernon, and testified on his own behalf. The government called Special Agent Terrell Tadeo and Mackey.

Adolf, who represented codefendant David Howard at trial, testified that he "definitely" noticed Mackey sleeping on one occasion. J.A. 131. Adolf recalled that, during the prosecution's case in chief, government counsel approached Mackey to show him an exhibit that they intended to introduce. "[Government counsel] walked over to Mr. Mackey, and I remember that Mr. Mackey was sort of sitting back, leaning back in his chair with his left elbow on his left thigh, . . . and sort of with his chin resting on his fist, and [government counsel] held the document in front of him and he didn't move, he sort of sat there." J.A. 132. "Judge Conrad leaned into his microphone, because we were all sitting there and [Mackey] wasn't moving and

6

said, 'Mr. Mackey' . . . very loudly." Id. Mackey then "jumped up and sort of looked around and was licking his lips and moving his mouth and looked sort of confused and looked all over the room except at [government counsel]. And after a few seconds, he saw [government counsel] standing there and looked at the document." J.A. 133. After Mackey reviewed the document, he "went back into the position that he was [in] before with his chin on his fist." Id. Adolf did not remember who was testifying at the time or what document the government was showing.

Adolf did not specifically recall any other occasions where he noticed Mackey sleeping. Adolf made clear, however, that he "really didn't pay a lot of attention to what [Mackey] was doing throughout the trial" because he "was dealing with [his] own client and [the client's] own issues;" Mackey "wasn't directly in [his] line of sight unless [he] looked to the right [and] . . . [he] was [paying attention to the evidence]." J.A. 134-35.

Similarly, Culler, who represented codefendant Tracy Howard at trial, testified that he noticed Mackey sleeping on one occasion. Mackey's "head [was] down . . . [and he was] breathing very regularly as if he was sleeping." J.A. 145-46. Culler further testified that he stated to Adolf that Mackey was "asleep again." J.A. 145. Although Culler did not specifically

7

recall any other incidents, based on his statement that Mackey was "asleep again," he "believe[d]" that Mackey was asleep on "one other occasion." J.A. 146. Culler, like Adolf, made clear that he "was focused on the witnesses at that time because they were talking about [his] client mostly. And so [he] didn't pay any attention to Mr. Mackey after seeing [him asleep]." J.A. 151. Further, based on Culler's description of the courtroom, it appears that Mackey was not in his direct line of sight.[1]

Vernon, a juror in this case, testified that she noticed Mackey sleeping "[f]requently . . . almost every day . . . morning and evening" for "30 minutes at least" at a time. J.A. 153-55. Based on the courtroom setup, Mackey was sitting "directly across from [the jurors]." J.A. 153. "We could see [Mackey] clearly, and we were facing [him] completely." Id. Vernon specifically recalled that "[e]vidence was being presented and . . . witnesses were being questioned" when Mackey was asleep. J.A. 154. When asked to describe Mackey's appearance during those times, Vernon said that he appeared "[t]otally dozed off" and had "his hand on the table and head down and did not appear to be alert at all." Id. When Mackey was called on during trial, Ragin "would have to punch him . . . or kind of rouse[] him." J.A. 155-56.

---

[1] Additionally, Culler did not recall at which point during the trial the sleeping incidents occurred.

8

In addition, Vernon testified that other jurors noticed Mackey sleeping and commented on it in the jury room. While cross-examining Vernon about Mackey's conduct, the government asked whether, during jury deliberations, Vernon "h[e]ld [her] observation of Mr. Mackey resting his head against [Ragin], . . . did you consider that in your verdict against the defendant." J.A. 157. Vernon stated, "We discussed it. Yes." Id. Vernon found Ragin guilty on both counts.

Ragin also testified that Mackey was asleep frequently. During his testimony at the evidentiary hearing, Ragin expanded on his initial allegation, claiming that he observed Mackey sleeping between ten and twenty times for up to ten minutes at a time. Ragin said he had to nudge Mackey on several occasions when Mackey failed to respond to testimony presented at trial. As he sat next to Mackey during the trial, Ragin heard him snoring and observed his eyes closed. On at least one occasion, Mackey asked Ragin what he missed.

In addition, Ragin introduced an exhibit containing pages he initialed from the trial transcript, indicating occasions when he asserts Mackey was sleeping. The twenty pages Ragin initialed covered testimony from each of the witnesses who testified about Ragin's direct involvement in the conspiracy. Ragin did note, however, that the transcript pages he identified did not cover all of the testimony that was offered while Mackey

was sleeping and that Mackey also slept while other witnesses testified. On cross-examination, Ragin acknowledged that he had only alleged that Mackey was asleep on two occasions in his letter to the district court and in his sworn § 2255 motion and affidavit, and admitted that he had not included any details about the witnesses who were testifying or the substance of their testimony in his initial allegations. Ragin explained that when he filed the letter and § 2255 motion and affidavit, he was acting pro se and did not have access to the trial transcript. Reading through the trial transcript refreshed his recollection on when exactly Mackey was sleeping.

The government called Tadeo and Mackey as witnesses. Tadeo testified that he saw Mackey "nod off" on at least one, possibly two, occasions. Tadeo described "nodding off" as "kind of eyes closed, head dropping" and "struggling to stay awake." J.A. 179. Tadeo testified that his focus during trial was on the evidence presented and that he was "pay[ing] attention to what witnesses [were] saying." J.A. 182. The witness box was located directly across from the government's table, where Tadeo sat. Mackey was not in Tadeo's direct line of sight. Tadeo could not recall who was testifying at the time Mackey was "nodding off."

Mackey testified that he did not recall whether he slept during the trial. Mackey explained that he thought he "would

10

have recalled something like that" and that he would expect that the district court, his client, or one of the other attorneys would have addressed it on the record if it had been an issue. J.A. 221. At the time of this trial, Mackey was running for state district court judge. According to Mackey, he first heard of the sleeping allegations while he was running for sheriff and viewed them as "political . . . fodder." J.A. 222.

D.

After the evidentiary hearing, the district court issued an order denying and dismissing Ragin's § 2255 motion. The court held that the requisite showing of prejudice for ineffective assistance of counsel varies depending on the evidence: a presumption of prejudice only applies "when the evidence shows counsel slept through a 'substantial portion' of the defendant's trial," whereas the ordinary standard requiring the defendant to demonstrate prejudice applies in all other cases involving isolated allegations that counsel was asleep. Ragin v. United States, No. 3:10-cv-488-RJC, 2014 WL 4105898, at *7 (W.D.N.C. Aug. 19, 2014) (citing Muniz v. Smith, 647 F.3d 619 (6th Cir. 2011), and Burdine v. Johnson, 262 F.3d 336 (5th Cir. 2001) (en banc)).

After consideration of the testimony and evidence presented, the district court "f[ound] that Mackey was not asleep for 'substantial portions' of the trial." Id. In

11

support of its finding, the court determined that Ragin's testimony and his exhibit "listing ten to fifteen times during the trial that Mackey was asleep [were] not credible . . . [because] Ragin ha[d] great incentive to embellish his claim at this stage in the proceedings." Id. The court did find credible, apparently, Ragin's earlier accusation, "made within three months of the trial," that Mackey was asleep on two occasions, and that this allegation was consistent with the testimony of Culler, Adolf and Tadeo; each testified that Mackey appeared to be sleeping on one or two occasions. Id. Further, the court did not find Vernon's testimony credible because she "repeatedly referred to Ragin by his first name during her testimony, [and] may be remorseful for the severity of the sentence imposed." Id. "It is telling," the court stated, that "neither Ragin nor the juror brought Mackey's alleged sleeping to the attention of the Court during the trial when it could have been effectively addressed if it were occurring so frequently." Id.

The district court held that "[e]ven if Mackey fell asleep once or twice during the protracted trial involving over forty witnesses, the [trial] transcript reflects his attention to the six witnesses who directly implicated Ragin." Id. The district court, therefore, "appl[ied] the usual Strickland standard and

12

[would] not presume prejudice."[2]  Id.  After "careful review of the trial transcript," the court found that, based on the "substantial evidence against him, Ragin ha[d] not demonstrated a reasonable probability of a different outcome" and, therefore, that "the result of the trial was not fundamentally unfair or unreliable."  Id. at *8.  In light of its findings, the district court denied Ragin's § 2255 motion.

Ragin filed a timely notice of appeal, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

## A.

We review de novo a district court's legal conclusions in denying a § 2255 motion.  United States v. Stitt, 552 F.3d 345, 350 (4th Cir. 2008).  We also review de novo any mixed questions of law and fact addressed by the court as to whether the petitioner has established a valid Sixth Amendment ineffective

---

[2] In an alternative holding, the district court stated that even if it presumed prejudice, it would have found that the weight of the evidence against Ragin would overcome that prejudice.  Ragin, 2014 WL 4105898, at *7 n.6.  Although this is not critical to our analysis, we note that this was legal error.  See, e.g., Wright v. Van Patten, 552 U.S. 120, 124 (2008) ("Cronic held that a Sixth Amendment violation may be found 'without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial' when 'circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'"  (alteration in original) (quoting Bell v. Cone, 535 U.S. 685, 695 (2002))).

13

assistance claim. See Smith v. Angelone, 111 F.3d 1126, 1131 (4th Cir. 1997) ("Whether counsel's performance was constitutionally adequate is a mixed question of law and fact which we review de novo." (internal quotation marks omitted)). When the court conducts an evidentiary hearing prior to ruling, we review its findings of fact for clear error. See Stitt, 552 F.3d at 350. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

## B.

An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." Gideon v. Wainwright, 372 U.S. 335, 344 (1963). "Their presence is essential because they are the means through which the other rights of the person on trial are secured." Cronic, 466 U.S. at 653. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." Id. at 654.

In *Strickland*, the Supreme Court set forth a two-part test for deciding ineffective assistance of counsel claims. 466 U.S. at 687. First, the defendant "must show that counsel's performance was deficient." *Id.* To prove deficiency, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the defendant must show that the deficient performance resulted in actual prejudice to the defendant. *Id.* at 687. A showing of prejudice requires the defendant to prove that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

*Strickland* and its companion case *Cronic* gave more specific instructions on finding prejudice. The Court stated that in certain limited contexts, "prejudice is presumed." *Strickland*, 466 U.S. at 692. In *Cronic*, the Court reiterated the general *Strickland* rule and also provided that "[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. The Court identified three distinct situations in which a presumption of prejudice is appropriate: First, prejudice is presumed when the defendant is completely denied counsel "at a critical stage of his trial." *Id.* at 659. Second, prejudice is presumed if there has been a constructive denial of counsel. *Id.* This happens when a lawyer

15

"fails to subject the prosecution's case to meaningful adversarial testing," thus making "the adversary process itself presumptively unreliable." Id. Third, the Court identified certain instances "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Id. (citing, as an example, Powell v. Alabama, 287 U.S. 45 (1932)).

That a case warrants a finding of presumed prejudice under any of these three prongs is "an extremely high showing for a criminal defendant to make." Brown v. French, 147 F.3d 307, 313 (4th Cir. 1998). If, however, the defendant makes such a showing, it would necessarily follow that there was a structural error, which, by definition, "affect[s] the framework within which the trial proceeds" and prevents the trial from "reliably serv[ing] its function as a vehicle for determination of guilt or innocence." Arizona v. Fulminante, 499 U.S. 279, 310 (1991).

Therefore, Cronic errors are structural, requiring automatic reversal without any inquiry into the existence of actual prejudice. See, e.g., Wright, 552 U.S. at 124 ("Cronic held that a Sixth Amendment violation may be found 'without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial.'" (quoting

16

Bell, 535 U.S. at 695)); Musladin v. Lamarque, 555 F.3d 830, 837-38 (9th Cir. 2009) ("Cronic specifically holds that automatic reversal is required where a defendant is denied counsel at a 'critical stage,' and we cannot depart from that holding."); United States v. Arbolaez, 450 F.3d 1283, 1294 (11th Cir. 2006) (explaining that the "constructive denial of counsel is 'legally presumed to result in prejudice' and thus to constitute a structural error" (quoting Strickland, 466 U.S. at 692)). In other words, "counsel's incompetence can be so serious that it rises to the level of a constructive denial of counsel which can constitute constitutional error without any showing of prejudice." Strickland, 466 U.S. at 703 n.2 (Brennan, J., concurring in part and dissenting in part) (citing Javor v. United States, 724 F.2d 831, 834 (9th Cir. 1984), for the proposition that "unconscious or sleeping counsel is equivalent to no counsel at all").

Absent these narrow circumstances of presumed prejudice under Cronic, defendants must show actual prejudice under Strickland. See Strickland, 466 U.S. at 692; Cronic, 466 U.S. at 666 & n.41. Actual prejudice requires that the defendant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

17

probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

## III.

Although this is a case of first impression in this Circuit, four other circuits have considered whether application of a presumption of prejudice under Cronic is warranted when a defendant's counsel is asleep during trial. All of these circuits have held that prejudice must be presumed when counsel sleeps either through a "substantial portion of [a defendant's] trial" or at a critical time during trial. Javor, 724 F.2d at 834 ("When a defendant's attorney is asleep during a substantial portion of his trial, the defendant has not received the legal assistance necessary to defend his interests at trial."); see also Muniz, 647 F.3d at 625-26 ("Muniz must show that his attorney slept through a substantial portion of the trial for the Cronic presumption of prejudice to attach."); Burdine, 262 F.3d at 341 ("[W]e conclude that a defendant's Sixth Amendment right to counsel is violated when that defendant's counsel is repeatedly unconscious through not insubstantial portions of the defendant's capital murder trial."); Tippins v. Walker, 77 F.3d 682, 687 (2d Cir. 1996) ("We therefore conclude that Tippins suffered prejudice, by presumption or otherwise, if his counsel

18

was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake.").

We agree with other circuits and hold that a defendant's Sixth Amendment right to counsel is violated when that defendant's counsel is asleep during a substantial portion of the defendant's trial.[3] In such circumstances, Cronic requires us to presume prejudice because the defendant has been constructively denied counsel. For good reason – "sleeping counsel is tantamount to no counsel at all." United States v. DiTommaso, 817 F.2d 201, 216 (2d Cir. 1987).

A.

While "episodes of inattention or slumber are perfectly amenable to analysis under the Strickland prejudice test[,] . . . '[p]rejudice is inherent' at some point, 'because unconscious or sleeping counsel is equivalent to no counsel at all.'" Tippins, 77 F.3d at 686 (quoting Javor, 724 F.2d at 834). It should go without saying that "[e]ffectiveness of counsel depends in part on the ability to confer with the client during trial on a continuous basis, and the attorney must be 'present and attentive' in order to make adequate cross-examination – 'a matter of constitutional importance' by virtue

---

[3] Our holding today does not preclude a claim in which counsel is asleep during a critical portion of the defendant's trial. See Tippins, 77 F.3d at 687. Ragin, however, has not pled facts that would implicate such a rule.

19

of the Sixth Amendment." Id. (quoting Javor, 724 F.2d at 834). Further, "if counsel sleeps, the ordinary analytical tools for identifying prejudice are unavailable. The errors and lost opportunities may not be visible in the record, and the reviewing court applying the traditional Strickland analysis may be forced to engage in 'unguided speculation.'" Id. (quoting Javor, 724 F.2d at 834); see also Javor, 724 F.2d at 834-35 ("[A]n inquiry into the question of prejudice would require 'unguided speculation' and 'would not be susceptible to intelligent, even handed application' because an attorney's absence prejudices a defendant more by what was not done than by what was done."). In other words, when counsel is absent – physically or due to sleep – "the evil lies in what the attorney does not do, and is either not readily apparent on the record, or occurs at a time when no record is made." Javor, 724 F.2d at 834.

Moreover, the question of prejudice under Strickland ordinarily involves consideration of the range of strategies and tactics available to a lawyer. Strickland, 466 U.S. at 689-90. "[T]he buried assumption in our Strickland cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse." Tippins, 77 F.3d at 687. Of

20

course, we cannot make such an assumption when counsel is asleep during a substantial portion of the defendant's trial.[4]

B.

We do not understand Ragin's claim of prejudice to be that his lawyer failed to take any particular initiative at trial that resulted in prejudice, as the government argues; rather, Ragin claims that during a substantial portion of the trial, he had no counsel to determine what options were available. Indeed, "there is a great difference between having a bad lawyer and having no lawyer: if the lawyering is merely ineffective, then the decision to grant relief turns on the degree of incompetence and prejudice to the defendant; if the defendant had no lawyer, prejudice is legally presumed in every case, and the defendant is entitled to relief in every case." United

---

[4] We recognize that there are "real dangers in presuming prejudice merely from a lack of alertness." Tippins, 77 F.3d at 686, 688 (noting that "[l]awyers may sometimes affect a drowsy or bored look to downplay an adversary's presentation of evidence" and expressing concern that a per se rule may provide "unscrupulous attorneys" a "tactical device" that could be "sprung at some later strategic phase . . . if events developed very badly for a defendant"); Prada-Cordero v. United States, 95 F. Supp. 2d 76, 81-82 (D.P.R. 2000) ("[A] court should be cognizant that attorneys may use the appearance of sleep as a strategic tool to downplay the importance of an adversary's presentation"; "[m]oreover, a rule that required a finding of prejudice whenever an attorney slept during a trial would provide unscrupulous practitioners with a safety valve to annul trials that they feel they are at risk of losing." (citing Tippins, 77 F.3d at 688)). These "dangers" are not, however, at issue in this case as there is no suggestion in the record that Mackey used the appearance of sleep as part of a strategy.

States v. Taylor, 933 F.2d 307, 312 (5th Cir. 1991). When an attorney is dozing or asleep, a "client cannot consult with his or her attorney or receive informed guidance from him or her during the course of the trial." Javor, 724 F.2d at 834.

We therefore conclude that Ragin would suffer Cronic prejudice if his counsel was asleep during a substantial portion of the trial. Such circumstances implicate a fundamental value that Strickland instructs us to keep in mind: "In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Strickland, 466 U.S. at 696 (emphasis added). Thus, the dispositive question in this case is whether the circumstances surrounding Mackey's representation of Ragin justify a presumption of prejudice under Cronic, the issue to which we now turn.

IV.

Because we are "left with the definite and firm conviction that a mistake has been committed" in the district court's findings of fact and credibility determinations, we reverse the district court's determination that Mackey was not asleep for a

22

substantial portion of the trial.  See Dugger, 485 F.3d at 239 (providing clear error standard).

## A.

Besides Mackey, who, tellingly, could not recall whether he was asleep at trial, every witness who testified stated that Mackey was asleep, appeared to be asleep, or was "nodding off" at some point.  Two witnesses, including the government's witness, testified that Mackey was asleep or nodding off on possibly two occasions.  This is consistent with Ragin's affidavit, which the district court did not discredit.

Vernon testified that she noticed Mackey sleeping "[f]requently . . . almost every day . . . morning and evening" for "30 minutes at least" at a time.  J.A. 153-55.  She specifically recalled that "[e]vidence was being presented and . . . witnesses were being questioned" when Mackey was asleep.[5] J.A. 154.  Further, Vernon testified that other jurors noticed Mackey sleeping and commented on it in the jury room.  Moreover, on cross-examination, the government asked whether, during jury deliberations, Vernon "h[e]ld [her] observation of Mr. Mackey resting his head against . . . the defendant."  J.A. 157.

_____

[5] Even assuming, arguendo, that Mackey only slept during the portion of trial in which no witness testimony directly implicated Ragin, "[t]he adversary process becomes unreliable when no attorney is present to keep the taint of conspiracy from spreading to the client."  United States v. Russell, 205 F.3d 768, 772 (5th Cir. 2000).

23

Vernon stated, "We discussed it. Yes." Id. As it stands, it appears not only that the jurors discussed their observations of Mackey "resting his head" during jury deliberations but also, even more troubling, that the jurors may have held Mackey's conduct against Ragin in reaching their verdict.[6]

Remarkably, the district court dismissed Vernon's testimony because she "repeatedly referred to Ragin by his first name during her testimony, [and] may be remorseful for the severity of the sentence imposed."[7] Ragin, 2014 WL 4105898, at *7. There is, however, nothing in the record to suggest that Vernon had knowledge of the sentence the district court imposed, that she felt remorseful, or that she had improper communications or any interactions with Ragin.[8] This was clear error.

---

[6] Surprisingly, the government never clarified whether Vernon actually did hold Mackey's conduct against Ragin in reaching her verdict. Whether this evidence would support a finding of actual prejudice under Strickland is an issue we need not reach because prejudice in this case is presumed under Cronic.

[7] The district court also stated that Vernon should have brought Mackey's sleeping to the district court's attention. While it would have been helpful had Vernon, or any of the jurors, alerted the district court to Mackey's conduct, we cannot assume that any juror knew or should have known that they could bring this information to the court's attention. Further, we are unaware of any duty that the juror had to bring the conduct to the district court's attention.

[8] It is true that Vernon referred to Ragin by his first name – Nicholas – while she referred to Mackey by his first and last names, as did Adolf. J.A. 130, 132. But it is also true that

24

Indeed, Vernon's testimony is not inconsistent with all the other witnesses for the following reasons. First, the district court utterly failed to consider the likely possibility that each witness saw Mackey asleep or nodding off on <u>different occasions</u>. Had the court done so, it would have reached the conclusion that Mackey could have been asleep on <u>at least</u> six or seven different occasions.[9] This is consistent with Vernon's testimony – Mackey appeared to be asleep "[f]requently . . . almost every day . . . morning and evening." J.A. 153-54.

Second, based on the courtroom setup, Mackey was sitting "directly across from [the jurors]." J.A. 153. The jurors "could see [Mackey] clearly, and [they] were facing [him] completely." <u>Id.</u> Every other witness at the evidentiary hearing stated that Mackey was not directly in their line of sight and that their attention was directed at the witness box, which was located at the opposite side of the courtroom from where Mackey sat. <u>Cf.</u> <u>Tippins</u>, 77 F.3d at 688 ("[Government counsel] – who presumably would be looking elsewhere most of the time - testified that he too saw [defendant's lawyer asleep].").

_____

during trial, the witnesses referred to Ragin by his first name. There is scant reason in these circumstances to discredit Vernon's testimony.

[9] Adolf witnessed Mackey asleep on one occasion. Culler and Ragin each witnessed Mackey asleep on at least two occasions. And, Tadeo witnessed Mackey "nodding off" on one or two occasions.

25

Common sense dictates that a juror who is seated directly across from counsel can observe counsel asleep more often during a two-week trial than a person who does not have a direct line of sight to counsel and whose attention is admittedly directed to the opposite side of the courtroom from where counsel sat. Not only would the juror see counsel asleep more frequently based on this courtroom setup but the juror would also be in the best position to accurately assess how long counsel was asleep during each incident.

Finally, there is nothing in the record that is inconsistent with, or discredits, Vernon's testimony. The government did not call any witnesses to dispute Vernon's testimony, although it had ample opportunity to do so. In fact Tadeo, the government's only proffered witness other than Mackey, testified that Mackey nodded off on one or two occasions.

Astonishingly, Mackey himself did not dispute the allegation that he was sleeping during trial; instead, he referred the district court to the trial transcript based on his belief that the court would have admonished him on the record. Perhaps; perhaps not. Perhaps like other witnesses in this case, the district court was looking elsewhere most of the time – for example, at the witness and juror box.

26

Vernon's testimony is unrebutted and consistent with the testimony of every witness in this case: Mackey slept "almost every day" – "morning and evening" – of the trial. Generally, we are reluctant to overturn a district court's weight and credibility determinations; but, when the testimony of an unbiased witness – who was in the best position to observe Mackey's conduct – goes unrebutted, and that testimony is discredited without good reason, there is justification for finding clear error.[10]

Based on this record, we find it impossible not to conclude that Mackey slept, and was therefore not functioning as a lawyer during a substantial portion of the trial.[11] "Unconscious counsel equates to no counsel at all." <u>Burdine</u>, 262 F.3d at

---

[10] Because we conclude that the district court committed clear error in discrediting the testimony of a disinterested witness in the best position to observe Mackey throughout the trial, we need not consider the district court's credibility finding concerning Ragin's testimony that Mackey slept on ten to twenty occasions during his trial.

[11] While we conclude that the manner in which Mackey slept in the instant case was substantial, we decline to define this term for all cases. Whether a lawyer slept for a substantial portion of the trial should be determined on a case-by-case basis, considering, but not limited to, the length of time counsel slept, the proportion of the trial missed, and the significance of the portion counsel slept through. At the same time, however, while we decline to dictate precise parameters for what must necessarily be a case-by-case assessment, we caution district courts that the scope of our holding today should not be limited to only the most egregious instances of attorney slumber.

349. Unconscious counsel cannot "analyze, object, listen or in any way exercise judgment on behalf of a client." Id. Because we have no basis to conclude that an attorney who sleeps through a substantial portion of the trial has exercised judgment on his client's behalf, "we have insufficient basis for trusting the fairness of that trial and consequently must presume prejudice." Id. Therefore, the fact that Mackey was sleeping during Ragin's trial amounted to constructive denial of counsel for substantial periods of that trial.

B.

The government contends that the facts of this case "stand in stark contrast to the 'egregious' facts presented in cases where courts have presumed prejudice." Gov.'s Opp. Br. 17 (citing Burdine, 262 F.3d at 349). We disagree, as the facts of this case are equally – if not more – egregious than the facts presented in cases where other circuits have presumed prejudice.

In Javor, for example, the magistrate judge noted that the trial judge saw that counsel was asleep but did not "call a recess because the attorney would only doze off momentarily and then wake up." 724 F.2d at 836 (Anderson, J., dissenting). The magistrate judge also found that "all of the 'dozing' occurred during times when the court proceedings did not concern issues which applied to defendant Javor," as there were multiple defendants in Javor. Id. Based on this record, the Ninth

28

Circuit nevertheless held that counsel was asleep during a substantial portion of the two-week trial.

In Burdine, "four neutral witnesses" – three jurors and the deputy clerk – testified that counsel "repeatedly dozed or slept as the State questioned witnesses and presented evidence supporting its case against Burdine." 262 F.3d at 339. Specifically, one juror recalled seeing counsel "doze or nod off between two and five times while the prosecuting attorney questioned witnesses." Id. Another juror testified that counsel was asleep "as many as ten times during the trial, at one point for 'a good probably at least 10 minutes' as the prosecution questioned a witness." Id. The deputy clerk recalled "lots of incidents" of counsel sleeping during the trial. Id. There were, however, three witnesses, including another juror, who testified that they had not noticed counsel asleep during the trial. Id. Based on this record, the Fifth Circuit held that the "repeated unconsciousness of Burdine's counsel through not insubstantial portions of the critical guilt-innocence phase of Burdine's capital murder trial warrants a presumption of prejudice." Id. at 349.

Here, as discussed extensively above, every witness stated that they observed Mackey asleep on at least one occasion, with multiple witnesses testifying that Mackey was asleep on multiple occasions. Vernon, who had a direct view of Mackey, testified

that Mackey appeared to be asleep "[f]requently . . . almost every day . . . morning and evening" for "30 minutes at least" at a time during the two-week trial. The jurors discussed and commented on Mackey being asleep, including during jury deliberations (and may have held this fact against Ragin in reaching their verdict). None of this evidence is in dispute. There were no witnesses that testified that Mackey was not asleep – not even Mackey. These facts are extraordinary and egregious.

As the government concedes, "[t]here is little doubt that trial counsel cannot provide effective assistance while sleeping." Gov.'s Opp. Br. 17. Indeed. And, as Cronic recognized, there are some egregious circumstances that "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. This case presents such circumstances.

V.

"While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." Id. at 657 (quoting United States ex rel. Williams v. Twomey, 510 F.2d 634, 640 (7th Cir. 1975)). Ragin was thrown unarmed into the arena to face the gladiators without benefit of

30

the assistance of counsel to which he had an absolute right.  As a result, Ragin's trial was not a confrontation between adversaries in which any reasonable person can have confidence. Such an unfair battle – one in which one side is represented and the other is not - is a clear and direct violation of the Sixth Amendment.  Accordingly, we vacate the judgment of conviction and sentence, direct entry of judgment in favor of Ragin on his § 2255 motion, and remand for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>