**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-6710

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

JOSE NUNEZ-GARCIA,

        Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Michael F. Urbanski, Chief District Judge.  (5:09-cr-00035-MFU-RSB-2)

Argued:  March 9, 2022                          Decided:  April 20, 2022

Before GREGORY, Chief Judge, and NIEMEYER and AGEE, Circuit Judges.

Affirmed by published opinion.  Judge Agee wrote the opinion, in which Chief Judge Gregory and Judge Niemeyer joined.

**ARGUED:**  Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Harrisonburg, Virginia, for Appellant.  Samuel Cagle Juhan, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.  **ON BRIEF:**  Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Daniel P. Bubar, Acting United States Attorney, Roanoke, Virginia, Jean B. Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

AGEE, Circuit Judge:

Petitioner Jose Nunez-Garcia, a naturalized United States citizen, received advice from counsel in 2010 that because of his newly obtained citizenship, his guilty plea to one count of conspiring to possess, with the intent to distribute, methamphetamine and mixtures containing methamphetamine would not subject him to deportation. But his citizenship was revoked in 2016. In 2018, Nunez-Garcia received a Notice to Appear informing him that he would be removed from the country because his 2010 conviction was an aggravated felony. Upon receiving that notice, he filed a collateral attack upon his 2010 guilty plea under 28 U.S.C. § 2255.

The district court found that Nunez-Garcia's 2018 petition was untimely under § 2255(f)(4), which provides a one-year limitations period from the date on which he could have discovered the facts supporting his claim through due diligence. The court explained that Nunez-Garcia was on notice in 2016, when his citizenship was revoked, that he could be deported as a result of his 2010 methamphetamine conviction. Nunez-Garcia appeals, claiming that he could not have had notice of that fact until he received the Notice to Appear in 2018. For the reasons that follow, we affirm the district court's judgment.

I.

A.

Nunez-Garcia, a native of Mexico, entered the United States in 1999 as the child of a lawful permanent resident (his mother). From February 12, 2009, to April 29, 2009, he

2

engaged in a conspiracy to distribute methamphetamine and substances containing methamphetamine in and around Harrisonburg, Virginia.

During that same period, Nunez-Garcia—by then an adult—initiated naturalization proceedings. Relevant here, in April and July 2009, he submitted separate naturalization forms with each containing an affirmation that he had never knowingly committed a crime or offense for which he had not been arrested. In fact, the Harrisonburg Police Department arrested Nunez-Garcia on April 29, 2009, on state law charges arising out of the methamphetamine conspiracy. He retained Scott Hansen to represent him on those charges, which were eventually *nolle prossed* after federal prosecutors expressed their intent to seek federal charges for those acts.

In September 2009, a few months after Nunez-Garcia became a citizen, a federal grand jury in the Western District of Virginia indicted him and his co-conspirators for offenses relating to the methamphetamine conspiracy. He again retained Mr. Hansen to represent him. The Government offered Nunez-Garcia a plea bargain. While considering it, Nunez-Garcia asked Mr. Hansen, "if accepting the plea bargain . . . would result in his de facto deportation." J.A. 169. Nunez-Garcia has alleged that Mr. Hansen told him, "Don't worry about it; you not going to get deported because you are citizen." J.A. 349.

Nunez-Garcia then accepted the plea offer and pleaded guilty to one count of conspiring to possess, with the intent to distribute, both 50 or more grams of methamphetamine and 500 or more grams of a mixture or substance containing methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846. He was sentenced to 70 months' imprisonment. His conviction for that offense is considered an "aggravated felony" under

3

the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1101(a)(43)(B), (U). Any noncitizen convicted of an aggravated felony is automatically subject to removal from the United States and disqualified from seeking several types of discretionary relief from removal. *See generally Moncrieffe v. Holder*, 569 U.S. 184, 187–88 & n.1 (2013).

The veracity of Nunez-Garcia's affirmations on his two 2009 naturalization forms became the focus of a federal grand jury in the Eastern District of Virginia in February 2016. That month, the grand jury indicted Nunez-Garcia on one count of making false statements under oath in support of his application for naturalization. *See* 18 U.S.C. § 1015(a). The indictment alleged that Nunez-Garcia's statement on his 2009 naturalization forms—that he had not committed a crime for which he was never arrested––was knowingly false given his involvement in the methamphetamine conspiracy that resulted in his 2010 conviction. He retained new counsel, based in Alexandria, Virginia, to defend him, but he was found guilty of the false statement charge after a bench trial.

Before sentencing, Nunez-Garcia's new attorney informed him that he would lose his citizenship and be subject to deportation. J.A. 421 ("I never knew in my life I was going to get deported until 2016 when my attorney in Alexandria explain it to me."). That advice was reflected in a sentencing memorandum his counsel filed on his behalf. J.A. 289 ("Based upon his conviction in this case, he will lose his beloved citizenship. Upon his release from service of his [2010] sentence, Mr. Nunez-Garcia will have to fight deportation from this country."). Moreover, the Presentence Report ("PSR") noted that Nunez-Garcia "faces the loss of his U.S. citizenship and removal from the United States following completion of his custodial term." J.A. 507. Nunez-Garcia's counsel also

4

informed him that his 2010 methamphetamine conviction was an "aggravated felony" under the INA and he admitted, "I know it was aggravated felony in 2016." J.A. 422.

Nunez-Garcia appeared for sentencing on July 8, 2016. His counsel urged the court to impose a time-served sentence because Nunez-Garcia would be receiving "the ultimate punishment": the revocation of his citizenship. J.A. 123. So upon his release, counsel proffered, he "will go into deportation proceedings, and likely, that will result in his deportation to Mexico." *Id.* The district court, persuaded by those arguments, imposed a time-served sentence to be followed by two years of supervised release. One of the conditions of release was that Nunez-Garcia "cooperate with authorities of the Department of Homeland Security and . . . surrender to a duly authorized immigration official as directed." J.A. 127. The court also signed an order in open court revoking Nunez-Garcia's citizenship immediately upon sentencing him. J.A. 128, 135–36.

B.

Nearly two years after his 2016 sentencing, the BIA served Nunez-Garcia with a Notice to Appear for removal proceedings. It informed him that he was removable because his 2010 conspiracy conviction qualified as both a "controlled substance" conviction, 8 U.S.C. § 1227(a)(2)(B)(i), and an "aggravated felony," *id.* § 1227(a)(2)(A)(iii).

In response, Nunez-Garcia filed a *pro se* "Emergency Motion to Vacate" on October 25, 2018, in the United States District Court for the Western District of Virginia. He later filed an amended motion to vacate under 28 U.S.C. § 2255, with the benefit of counsel, asserting one claim under *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. Nunez-Garcia alleged Mr. Hansen wrongly advised him that pleading guilty to the

5

methamphetamine conspiracy offense would have no deportation consequences. He asserted this advice rendered his guilty plea involuntary because absent this incorrect legal advice, he would not have pleaded guilty.[1] He therefore requested that his 2010 guilty plea be vacated.

The Government moved to dismiss the petition, arguing that it was time-barred under § 2255(f). It posited that Nunez-Garcia had notice of his *Strickland* claim either as early as 2010, when he was sentenced for the methamphetamine conspiracy conviction, or as late as July 8, 2016, when he was notified in open court that his citizenship was being revoked and that he was subject to deportation. The district court held an evidentiary hearing on the motion and heard additional oral argument from counsel at its conclusion.

The district court granted the Government's motion to dismiss by written opinion, finding that it was "clear from the record that Nunez-Garcia knew as of July 8, 2016[,] that he faced deportation." J.A. 471. The court pointed first to the arguments that Nunez-Garcia's counsel made before and during the 2016 sentencing proceedings about the likelihood he would be deported. The court also relied on Nunez-Garcia's testimony at the evidentiary hearing that his counsel told him in 2016 that his 2010 methamphetamine conspiracy conviction was an aggravated felony. These facts, the court determined, "put him on notice" on July 8, 2016, "that he was at risk of being deported." J.A. 471. This therefore "trigger[ed] the statute of limitations" on his *Strickland* claim. J.A. 473. And

---

[1] This is the *only* potential claim Nunez-Garcia could raise in his § 2255 petition arising out of the legal advice he received from Mr. Hansen. While we consider it debatable whether Mr. Hansen's advice, when given, was incorrect, for purposes of this opinion we will assume (without deciding) that it was.

since § 2255(f)(4) provided only a one-year statute of limitations from that date, the court

found that Nunez-Garcia's October 2018 filing was untimely by more than a year.

Nunez-Garcia timely noted an appeal. We granted a certificate of appealability, *see*

28 U.S.C. § 2253(c), and therefore have jurisdiction, *see id.*; *see also* 28 U.S.C. § 1291.


II.

We review a district court's legal conclusions and rulings on mixed questions of law

and fact de novo. *United States v. Ragin*, 820 F.3d 609, 617 (4th Cir. 2016). "When the

court conducts an evidentiary hearing prior to ruling, we review its findings of fact for clear

error." *Id.* Clear error occurs if our review of the entire record leaves us "with the definite

and firm conviction that a mistake has been committed." *Id.* (citation omitted).

Outside of citing these generally applicable standards of review, neither party

addresses whether the district court's finding of when § 2255(f)(4)'s statute of limitations

accrues is a legal conclusion, a mixed determination of law and fact, or a factual finding.

We will therefore assume that Nunez-Garcia is entitled to a de novo review of the district

court's ultimate finding that the limitations period accrued at latest on July 8, 2016.[2]

---

[2] We note, however, that the case law from our sister circuits supports performing clear error review. *See United States v. Wright*, 945 F.3d 677, 686 (2d Cir. 2019) (observing that the date on which a petitioner should have discovered facts giving rise to his claim under § 2255(f)(4) is a "fact-specific issue[]"); *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002) (treating the question as a factual one because it "assigns to the trial judge the responsibility of determining not only the historical events that are relevant to how the case should be decided but also the legal significance of those events"); *Montenegro v. United States*, 248 F.3d 585, 591 (7th Cir. 2001) (same), *partially overruled on other* (Continued)

III.

This case is only about the timeliness of Nunez-Garcia's § 2255 petition. Such petitions must typically be filed within one year of the date "on which the judgment of conviction becomes final." § 2255(f)(1). But petitions based on facts that arise after a conviction becomes final must instead be filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." § 2255(f)(4).[3] If the petition is filed any later, "it must be dismissed as untimely." *United States v. Gasden*, 332 F.3d 224, 226 (4th Cir. 2003).

To determine whether Nunez-Garcia's petition is timely, we must first "identify a particular time" that "clearly shows that diligence is in order." *Johnson v. United States*, 544 U.S. 295, 308 (2005). Section 2255(f)(4)'s reference to "due diligence" "is equivalent to a rule of 'inquiry notice.'" *Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013). So if circumstances arise that place a petitioner on inquiry notice that "he has an interest in challenging the prior conviction," then § 2255(f)(4)'s due diligence requirement is triggered. *Johnson*, 544 U.S. at 308 ("[D]iligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction."); *see also SD3 II LLC v. Black & Decker (U.S.), Inc.*,

_____

grounds by *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001); *see also United States v. Johnson*, 734 F. App'x 153, 157 (3d Cir. 2018).

[3] Nunez-Garcia does not rely on the alternative limitations periods set forth in § 2255(f)(1), (2), and (3).

8

888 F.3d 98, 113 (4th Cir. 2018) ("[I]nquiry notice does not require full knowledge of the underlying claim as a condition precedent of the duty to investigate.").

From there, we analyze whether a "duly diligent person in [the] petitioner's circumstances would have discovered" the facts supporting the claim or claims raised in the petition. *E.g.*, *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000); *see also Ford v. Gonzalez*, 683 F.3d 1230, 1235–36 (9th Cir. 2012) (collecting cases holding that 28 U.S.C. § 2244(d)(1)(D), the equivalent to § 2255(f)(4) for state prisoners, sets "an objective standard" that "also considers the petitioner's particular circumstances"). Petitioners need only conduct a reasonable investigation; they need not "undertake repeated exercises in futility or . . . exhaust every imaginable option." *Aron*, 291 F.3d at 712. But because "[t]he exercise of reasonable diligence is an ongoing process," "[w]hat is required at any particular time depends on what one has notice of at that time." *United States v. Denny*, 694 F.3d 1185, 1190 (10th Cir. 2012). And, as noted, the petitioner's investigation needs to only uncover the *facts* supporting the claim(s) raised in the petition—not their legal significance. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.").

Nunez-Garcia's arguments on appeal focus only on the first aspect of our analysis, the "particular time" that "clearly shows diligence is in order." *Johnson*, 544 U.S. at 308. He contends that he did not have inquiry notice in 2016 that his 2010 methamphetamine conviction could serve as the basis for his eventual deportation. Instead, he posits that he needed notice "that his 2010 conviction was an aggravated felony that would subject him

9

to automatic deportation." Opening Br. 10. He asserts that the only time he received that particular notice was in 2018, when he was served with the Notice to Appear and therefore his October 2018 petition was timely. We disagree for two reasons.

First, Nunez-Garcia testified that his Alexandria-based attorney told him in 2016 that his methamphetamine conspiracy conviction was an aggravated felony. That notice alone triggered § 2255(f)(4)'s limitations period in 2016.

Second, even setting aside that admission, the nature of Nunez-Garcia's sentencing proceedings on July 8, 2016, put him on inquiry notice that his 2010 conviction was an aggravated felony. His own attorney stressed that Nunez-Garcia was likely to face deportation once released from custody, and after sentencing, the district court revoked Nunez-Garcia's citizenship in his presence. A person in Nunez-Garcia's position exercising due diligence could have discovered in short order that the reason his deportation was so likely was that his 2010 conviction qualified as an aggravated felony.

Under either set of events, Nunez-Garcia's October 2018 petition came well after § 2255(f)(4)'s one-year limitations period expired. We therefore hold that the district court correctly dismissed it as untimely.

## A.

For starters, Nunez-Garcia's own testimony during the evidentiary hearing shows that he had *actual notice*, not just inquiry notice, in 2016 that his 2010 methamphetamine conspiracy conviction was an aggravated felony under the INA.

10

Nunez-Garcia was asked whether Mr. Hansen had told him that if he had lied on his naturalization forms, his guilty plea to the methamphetamine conspiracy charge could permit his removal from the country. He responded:

> Yeah, it's correct. He never say—he never told me that if I sign these questions wrong that I'm going to get—I'm going to lose my citizenship. . . . Plus, I never knew in my life I was going to get deported until 2016 when my attorney in Alexandria explain it to me, everything, about the questions. . . . She explain a lot of things in Alexandria, my attorney, and that's when I started to know a lot of things.

J.A. 421–22. Nunez-Garcia's counsel then immediately followed up:

COUNSEL:            Did [Mr. Hansen] ever tell you that this methamphetamine charge was an aggravated felony?

NUNEZ-GARCIA:  No. I never know it was an aggravated felony. *I know it was aggravated felony in 2016. That's when I know was aggravated felony.* I didn't even know nothing.

J.A. 422 (emphasis added). In an "attempt[] to salvage his testimony," J.A. 474, his counsel asked one final question:

COUNSEL:            You knew—when you found—did you find out it was an aggravated felony when you got the notice to appear?

. . .

NUNEZ-GARCIA:  Yes; correct.

J.A. 422.

By his own admission, then, Nunez-Garcia knew in 2016 of the crucial fact supporting his *Strickland* claim: that his 2010 methamphetamine conspiracy conviction was an aggravated felony. This alone triggered § 2255(f)(4)'s limitations period, rendering his October 2018 petition time-barred. *See Denny*, 694 F.3d at 1189–90 (holding that a

11

prisoner's § 2255 petition, filed in November 2009, based on his attorney's failure to file a notice of appeal was untimely because the prisoner received actual notice from the district court clerk's office in September 2008 that no notice of appeal had been filed in his case); *see also, e.g.*, *Superville v. United States*, 771 F. App'x 28, 31 (2d Cir. 2019) (holding that the § 2255(f)(4) limitations period on a defendant's ineffective assistance of counsel claim, alleging that counsel failed to advise him that the offense to which he would plead guilty subjected him to presumptively mandatory detention, began to run at latest in October 2014 when he affirmed at his arraignment that he read his plea agreement, which contained a warning that his offenses exposed him to presumptively mandatory removal).

Nunez-Garcia does not dispute the legal significance of this testimony. Rather, he counters that it was clearly erroneous for the district court to rely on it at all. He contends now that the statement was an oversight owing to his lack of proficiency with the English language. Instead, he claims he meant to say that he first learned in *2018* that his methamphetamine conviction was an aggravated felony and that the district court should have made a factual finding in that regard. In support of this argument, he largely draws our attention to his response to counsel's follow-up question referenced above, in which he confirmed that he "[found] out [the 2010 conviction] was an aggravated felony when [he] got the notice to appear." J.A. 422.

There are two possible ways to interpret the totality of Nunez-Garcia's testimony. He could be right that he misspoke and meant to say he first learned in 2018 that his 2010 conviction was an aggravated felony. However, he had the opportunity to make that "correction" in the district court and he failed to do so. Moreover, both of his answers could

12

be truthful. There is no reason to doubt that Nunez-Garcia was told by his Alexandria attorney in 2016 that his 2010 conviction was an aggravated felony, and that the 2018 Notice to Appear again informed him that his 2010 conviction was an aggravated felony. The two propositions are not mutually exclusive. Nunez-Garcia was never asked if he misspoke when asserting that his Alexandria attorney told him in 2016 that his 2010 conviction was an aggravated felony. The district court's decision to credit this latter interpretation of Nunez-Garcia's testimony over the former cannot constitute clear error. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *see also United States v. Bishop*, 740 F.3d 927, 935 (4th Cir. 2014) ("In reviewing the district court's judgment, we are mindful that, as the trier of fact, that court was in a better position than we are to evaluate the credibility of witnesses, take into account circumstances, and make reasonable inferences."). Therefore, we can affirm the district court's judgment on this ground alone.

## B.

Setting aside Nunez-Garcia's admitted receipt of actual notice in 2016, the July 8, 2016, sentencing hearing itself would have placed a reasonable person in his position on inquiry notice that his 2010 conviction could serve as the basis for his deportation. And it would not have taken long for a reasonably diligent investigation to establish that his 2010 conviction was an aggravated felony and subjected him to removal. This rationale, too, shows that Nunez-Garcia's petition is untimely.

13

One of the prominent themes in Nunez-Garcia's counseled mitigation argument before and during his July 8, 2016, sentencing was that he was likely to be deported once he finished his custodial sentence for his 2010 conviction. Before sentencing, his counsel filed a sentencing memorandum asking the court for leniency because of the near certainty that he will be placed into removal proceedings once released from custody:

> Mr. Nunez-Garcia has already experienced personally devastating and wrenching collateral consequences for his crimes, one of which in particular is much harsher than the imposition of a period of incarceration. Based upon his conviction in this case, he will lose his beloved citizenship. Upon release from his 70-month sentence [stemming from his 2010 conviction], Mr. Nunez-Garcia *will have to fight deportation* from this country.

J.A. 289 (emphasis added). Indeed, Nunez-Garcia testified at the evidentiary hearing below that he and his Alexandria attorney discussed throughout 2016 that he would be facing deportation. J.A. 421 ("I never knew in my life I was going to get deported until 2016 when my attorney in Alexandria explain it to me, everything, about the questions."). The PSR also highlighted that Nunez-Garcia "face[d] the loss of his U.S. citizenship and removal from the United States following completion of his custodial term." J.A. 507; *see* J.A. 120 (Nunez-Garcia's counsel's affirmation that she reviewed the PSR with him and that he had no objections).

Nunez-Garcia's counsel echoed this sentiment during the sentencing hearing, noting that Nunez-Garcia "*will go* into deportation proceedings" after serving his 70-month sentence, which she predicted "likely . . . will result in his deportation to Mexico." J.A. 122 (emphasis added). Counsel concluded that this was "the ultimate punishment in this case," J.A. 123, and therefore asked the court to consider a time-served sentence.

14

Counsel's strategy worked. The district court imposed a sentence of time-served and expressly noted counsel's arguments as one of the reasons for doing so. J.A. 127 ("The Court has considered . . . the collateral consequences of [Nunez-Garcia's] conviction, which will include the loss of citizenship and the likelihood of deportation[.]"). But in accordance with those representations, the court also directed that, as a condition of his supervised release, Nunez-Garcia must "cooperate with authorities of the Department of Homeland Security and . . . surrender to a duly authorized immigration official as directed." *Id.* The district court then signed an order revoking his citizenship in open court with Nunez-Garcia present.

So, by July 8, 2016, Nunez-Garcia learned from both his Alexandria-based counsel and the district court that he was no longer a citizen and that it was all but guaranteed he would be facing removal proceedings once he finished serving his time on the 2010 conviction. In light of this material change in circumstances, he had a duty to inquire into the immigration consequences he faced as a noncitizen. *See Clarke*, 703 F.3d at 1100 (holding that a defendant, who "knew she was not a citizen," was put on inquiry notice under § 2255(f)(4) "that she might be removed" as a result of pleading guilty once her lawyer "mentioned possible immigration consequences").[4]

---

[4] Nunez-Garcia may have been on inquiry notice of these immigration consequences as early as 2010 when he was considering the Government's plea bargain. As noted, Nunez-Garcia was arrested in April 2009 on state law charges arising out of the methamphetamine conspiracy while he was still a noncitizen. Mr. Hansen recalled learning in 2010, however, that Nunez-Garcia obtained citizenship in the time after the state law charges were dropped, but before the federal conviction. Mr. Hansen was "curious how [Nunez-Garcia] was able to do that," so he "ask[ed] [Nunez-Garcia] if he had informed his (Continued)

15

All the foregoing factors distinguish this case from Nunez-Garcia's cited authority, *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012), and *Klaiber v. United States*, 471 F. Supp. 3d 696 (D. Md. 2020).[5] In both cases, the petitioners' *Strickland* claims, based on their counsel's incorrect advice about the immigration consequences of their guilty pleas, were timely because no intervening circumstances arose that would have put them on inquiry notice that the advice they had received was inaccurate. *See Akinsade*, 686 F.3d at 251–52 (reasoning that because no circumstances arose in the nine years between Akinsade's guilty plea and his being placed in removal proceedings, he "had no reason" to question counsel's advice); *Klaiber*, 471 F. Supp. 3d at 702, 706–07 (finding a petition timely under § 2255(f)(4) because Klaiber had a "good faith" basis for relying on counsel's

---

immigration attorney about the charges." J.A. 397. Mr. Hansen had "a vague recollection" of telling Nunez-Garcia that if he had not done so, "that would be a problem for him with regards to being able to maintain his citizenship" and potentially lead to his removal from the United States. J.A. 405–06. Nunez-Garcia said to not "worry about it" because his immigration attorney "was taking care of it." J.A. 397. Mr. Hansen cited these discussions as the reason he gave the advice Nunez-Garcia now challenges: "[T]he context I recall making that statement was, as long as immigration has been fully informed, you are good to go." J.A. 409.

If that were all true (and again assuming some aspect of Mr. Hansen's advice was wrong), then a reasonable person in Nunez-Garcia's position—knowing his immigration forms contained false statements—may well have begun investigating the immigration consequences of accepting the plea bargain in 2010. But Nunez-Garcia testified that Mr. Hansen never gave him any such advice: "[H]e never told me that if I signed the wrong questions, I'm going to lose my citizenship." J.A. 421. The district court did not resolve this conflicting testimony, so we do not rely on it as an alternate ground for our decision.

[5] Our discussion of *Klaiber* neither implicitly endorses nor questions the district court's rationale. Assuming it was rightly decided, its principles do not apply here.

16

assertion that he had derivative citizenship and thus could not be deported as a result of his guilty plea, and no facts calling that advice into question ever arose after the plea).

Here, however, Nunez-Garcia's circumstances had materially changed by July 8, 2016. By then, his counsel had repeated multiple times the likelihood that he would be deported, which the district court reinforced by revoking his citizenship. He therefore had a duty to inquire into the immigration consequences he likely faced at that time.

IV.

By his own testimony, Nunez-Garcia wasn't merely on inquiry notice, but actual notice, that his 2010 conviction was an aggravated felony and the basis for his possible deportation. But even disregarding Nunez-Garcia's admission, alternative grounds exist in the record as described above to support the district court's conclusion that § 2255(f)(4)'s statute of limitations expired well before Nunez-Garcia filed his petition in October 2018.

For these reasons, the judgment of the district court is

*AFFIRMED.*

17