### Commonwealth vs. Paul Gunter.

Suffolk. December 9, 2010. - April 19, 2011.

Present: Spina, Cowin, Cordy, Botsford, & Gants, JJ.[1]

*Practice, Criminal,* Postconviction relief, Appeal, Assistance of counsel, Capital case. *Homicide. Felony-Murder Rule. Joint Enterprise. Words,* "New and substantial."

Discussion of G. L. c. 278, § 33E, which, in addition to dictating the broad manner in which this court reviews, on direct appeal, convictions of murder in the first degree, also dictates the narrower manner in which this court reviews decisions on postconviction motions filed after it has decided a direct appeal, requiring that a defendant show a "new and substantial" issue that this court could not have considered in the course of plenary review. [485-488]

This court concluded that the criminal defendant, whose direct appeal from his conviction of murder in the first degree this court had previously reviewed, was not entitled under G. L. c. 278, § 33E, to review of the denial of his subsequent motion for a new trial, where the issue that the defendant advanced in his application for leave to appeal was not "new" within the meaning of § 33E, in that the claim was not something that was unavailable to the defendant at trial, on appeal, or at the time of his petition for rehearing following this court's plenary review on direct appeal, and reframing the omitted issue as an ineffective assistance of counsel claim did not make it new. [488-491]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on March 12, 2009.

The case was reported by *Ireland*, J.

*James M. Doyle* for the defendant.

*Kathleen Celio*, Assistant District Attorney, for the Commonwealth.

Spina, J. The defendant was convicted of murder in the first degree on a theory of felony-murder, G. L. c. 265, § 1; armed assault in a dwelling with intent to commit a felony, G. L. c. 265, § 18A; and illegal possession of a firearm, G. L. c. 269,

---

[1]Justice Cowin participated in the deliberation on this case prior to her retirement.

§ 10 (*a*). We affirmed the murder and firearm convictions but vacated the armed assault in a dwelling conviction for the reason that, as the predicate felony supporting the felony-murder conviction, it was duplicative. *Commonwealth* v. *Gunter*, 427 Mass. 259, 260-261, 275-276 (1998). We describe in some detail below the course that the case has traveled since then. In short, after unsuccessfully seeking habeas corpus relief in the Federal courts, the defendant returned to the State courts and filed a motion for a new trial in the Superior Court. His motion was denied. The defendant then filed an application in the county court, pursuant to G. L. c. 278, § 33E, seeking leave to appeal from that ruling. A single justice of this court initially denied the application, but, on reconsideration, reserved and reported the case to the full court. The case is now before us pursuant to the reservation and report.

1. *Background.* The relevant facts, as detailed in our earlier opinion, are straightforward:

> "The Commonwealth presented evidence that Gunter and several other individuals were involved in selling drugs out of an apartment in the Dorchester section of Boston. Gunter's role included paying the apartment residents, Rosalie Mitchell and Derek Sealy, a 'rental fee' in cash or in drugs for the use of the apartment. On March 21, 1991, three men entered the apartment and stole cocaine from one of the drug dealers affiliated with the operation. Gunter, Corey 'Floyd' Selby, Mark Edwards, and Larricia McConnico, a woman who had brought the thieves to the apartment on an earlier night and knew where they might be found, went looking for the thieves. Gunter drove the three to another apartment in Dorchester. Selby and Edwards carried loaded guns. Gunter remained in the car while the others went into that apartment. Admitted to the apartment, Selby and Edwards pushed Jack Berry, Jr., down the hall toward the kitchen. Berry was visiting Anthony Madden and Annette Gilbert, the apartment residents. While Edwards held Berry, Madden, Gilbert, and Gwendolyn McKenzie, Gilbert's friend, in the kitchen at gunpoint, Selby searched the apartment and the other two floors of the residence. Selby failed to find either the thieves or the stolen drugs. Edwards and McConnico, followed by Selby,

then left, but, as Berry was closing the door behind them, Selby pushed the door back open, said 'give this message to [the thieves],' and fatally shot Berry. They ran back to the vehicle where Gunter was waiting. Edwards testified that, when he told Gunter that Selby had shot someone, Gunter said words to the effect that 'nobody will rob us no more.' " (Footnotes omitted.)

*Commonwealth* v. *Gunter, supra* at 261-262.

The procedural history of the case is more complicated, as we shall now describe, starting with the defendant's direct appeal. While the direct appeal was pending before us, as part of our plenary review of the case pursuant to G. L. c. 278, § 33E, we raised on our own initiative, and asked the parties to file supplemental briefs on, the following issue: "Whether, in light of the defendant's conviction as a joint venturer of murder in the first degree on a theory of felony-murder, where the underlying felony was armed assault in a dwelling with intent to commit a felony, G. L. c. 265, § 18A, the felony is sufficiently 'independent' of the murder itself to justify the first degree murder conviction." *Id.* at 271. After receiving and reviewing the parties' supplemental briefs (and amicus briefs, see *id.* at 261 n.1) on that question, we concluded that the armed assault on the homicide victim, Berry, was not sufficiently separate from his murder, and therefore could not properly serve as a basis for the felony-murder conviction. *Id.* at 271-274. We also determined, however, that the Commonwealth had presented ample evidence of assaults on three other individuals — Madden, Gilbert, and MacKenzie — that supported the felony-murder conviction, and we therefore held that there was no substantial likelihood of a miscarriage of justice in the defendant's conviction. *Id.* at 274.[2]

After we issued our opinion, the defendant filed a lengthy petition for rehearing. See Mass. R. A. P. 27, as amended, 410 Mass. 1602 (1991). He argued, among other things, that our decision denied him his right to due process by sustaining the

---

[2]In a separate appeal, we affirmed Corey Selby's conviction of murder in the first degree on two separate theories, deliberate premeditation and felony-murder. See *Commonwealth* v. *Selby*, 426 Mass. 168 (1997). Mark Edwards pleaded guilty to manslaughter. See *Commonwealth* v. *Gunter*, 427 Mass. 259, 262 n.4 (1998).

felony-murder conviction on the basis of the assaults against Gilbert, Madden, and McKenzie, because the jury had not been asked to consider those assaults in deciding whether to find the defendant guilty of felony-murder. He also argued that he received ineffective assistance of counsel because his trial counsel had failed to challenge the theory, subsequently adopted in our decision, that the assaults on Gilbert, Madden, and McKenzie could form the basis of the felony-murder conviction. We denied the petition.

The defendant next sought habeas corpus relief in the Federal courts. Although a judge in the District Court initially granted the writ, the United States Court of Appeals for the First Circuit reversed that decision. See *Gunter* v. *Maloney*, 291 F.3d 74 (1st Cir. 2002). The First Circuit noted that our raising the merger doctrine issue on our own initiative as part of the plenary review of the case did not excuse the defendant's failure to raise it himself, and that our determination that the defendant had procedurally defaulted on the issue (i.e., waived the issue by not raising it) constituted an adequate and independent State ground for our decision. *Id.* at 79-80.[3,4] The court also considered the

---

[3]The United States Court of Appeals for the First Circuit aptly characterized our decision-making process under G. L. c. 278, § 33E, as follows:

> "The SJC's [Supreme Judicial Court's] conclusion was that even if the Commonwealth's original prosecution theory was defective, [the defendant] procedurally defaulted [i.e., waived] the claim and would not be saved from his default by a miscarriage of justice finding. There was no miscarriage of justice because [the defendant] was, on the evidence, guilty of felony murder, even had the indictment and instructions specified the correct theory. The SJC's ruling amounted to nothing more than a decision that [the defendant] would not be absolved from his procedural default under its miscarriage of justice review. . . . The SJC did not . . . render its own verdict of guilty on a new theory. Instead, it left intact an existing jury verdict, to which [the defendant] had preserved no valid objection, because after reviewing the whole record it concluded that justice had been done [i.e., that there was no substantial likelihood of a miscarriage of justice for purposes of G. L. c. 278, § 33E]."

*Gunter* v. *Maloney*, 291 F.3d 74, 79, 80-81 (1st Cir. 2002).

[4]Further, according to the First Circuit, the defendant's having filed a petition for rehearing did not excuse the procedural default. *Id.* at 80. The First Circuit held that this court's "unexplained denial" of the petition "cannot fairly be said to rest on federal law." *Id.*

defendant's argument, as a cause for the procedural default, that he received ineffective assistance of counsel. See *id.* at 81. The court held that where he had raised that issue for the first time in his petition for rehearing, he had not exhausted, in the State courts, his ineffectiveness claim. *Id.* ("Raising a claim for the first time to the state's highest court on discretionary review is not fair presentation for purposes of exhaustion"). See generally *Adelson* v. *DiPaola*, 131 F.3d 259, 261 (1st Cir. 1997) ("the exhaustion principle holds, in general, that a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application"). Finally, the First Circuit held that even if the claim was exhausted, the defendant still had no "habeas-worthy constitutional claim," and expressed its doubt that the defendant could meet the standard of *Strickland* v. *Washington*, 466 U.S. 668 (1984), such that any ineffective assistance of counsel would constitute cause for the procedural default (of the merger issue). *Gunter* v. *Maloney*, *supra* at 82-83 & n.2.

After the First Circuit dismissed the defendant's habeas corpus petition, he filed a motion for a new trial in the Superior Court. He alleged that he received ineffective assistance of both trial and appellate counsel because his attorneys had failed to recognize and challenge the legal adequacy of the felony-murder conviction (i.e., they did not raise the merger issue) and to recognize and defend against any so-called bystander theory of felony-murder. He also argued that, in this context, his trial counsel should have raised — so that the jury could have considered — the question whether Selby shot Berry while engaged in the joint venture to look for the thieves and stolen drugs, or as an act that was wholly separate and apart from the joint venture. Additionally, he argued that his rights to a jury trial and to due process were violated because the jury were never presented with the opportunity to consider whether the shooting of Berry occurred while the defendant, as a joint venturer, was engaged in the so-called bystander assaults.

The motion for a new trial was denied by a judge other than the trial judge, who had since retired. The judge ruled that this court had already considered the issues being raised by the

defendant. The defendant thereafter, pursuant to G. L. c. 278, § 33E, filed an application in the county court for leave to appeal from the adverse ruling. A single justice of this court initially denied the application and the defendant sought to appeal from that ruling to the full court. We dismissed his appeal. *Commonwealth* v. *Gunter*, 456 Mass. 1017 (2010). As stated in our opinion — indeed, as the defendant himself recognized — the decision of a single justice, acting as a gatekeeper pursuant to G. L. c. 278, § 33E, is final and unreviewable. See *id.*, and cases cited. We noted that the only remedy for someone in the defendant's position was to seek reconsideration from the single justice, *id.* at 1018, which the defendant then proceeded to do. On reconsideration, the single justice reserved and reported the case to the full court.

In reserving and reporting the entire case, the single justice did not himself decide the threshold question raised by the gatekeeper application, whether the defendant is pursuing a "new and substantial" issue. Rather, the single justice indicated that the parties were to brief that question as well as the substantive merits of the underlying issues before the full court. Consistent with the language of the last sentence of G. L. c. 278, § 33E, the order reserving and reporting the matter expressly (and correctly) stated that the full court would proceed to address the merits if and only if we first determine that the issues pressed by the defendant are "new and substantial." See *Commonwealth* v. *Ambers*, 397 Mass. 705, 706-707 (1986).

2. *General Laws c. 278, § 33E.* Section 33E of chapter 278 is relevant to our discussion in two ways: first, because it dictates the broad manner in which we review, on direct appeal, convictions of murder in the first degree; and second, because it dictates the very narrow manner in which we review decisions on post-conviction motions filed after we have decided a direct appeal.

In all cases involving a conviction of murder in the first degree, a defendant has a right of direct appeal to the Supreme Judicial Court, where the court reviews the "whole case":

"Under G. L. c. 278, § 33E, this court has extraordinary powers in reviewing capital convictions on direct appeal: we consider the whole case, both the law and the evidence,

to determine whether there has been any miscarriage of justice. . . . Unlike appellate review of convictions of other crimes, our consideration of first degree murder cases is not limited to issues based on objections rendered at trial. . . . We are empowered under G. L. c. 278, § 33E, to consider questions raised by the defendant for the first time on appeal, or even to address issues not raised by the parties, but discovered as a result of our own independent review of the entire record. . . . This uniquely thorough review of first degree murder convictions is warranted by the infamy of the crime and the severity of its consequences." (Citations omitted.)

*Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 744 (1986).[5] Here, in the course of our review of the whole case, we discovered and addressed the issue at the root of all of the defendant's efforts to obtain postconviction relief, namely the application of the merger doctrine to the defendant's felony-murder conviction.

Although cases resulting in convictions of murder in the first degree are subject to this uniquely broad form of review by this court on direct appeal, our review of decisions on postconviction motions filed after we have decided the direct appeal is significantly more narrow. Unlike other criminal defendants,

---

[5]General Laws c. 278, § 33E, provides in full:

"In a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (*a*) order a new trial or (*b*) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence. For the purpose of such review a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree. After the entry of the appeal in a capital case and until the filing of the rescript by the supreme judicial court motions for a new trial shall be presented to that court and shall be dealt with by the full court, which may itself hear and determine such motions or remit the same to the trial judge for hearing and determination. If any motion is filed in the superior court after rescript, no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court."

who are generally free to appeal from adverse decisions on postconviction motions, see, e.g., Mass. R. Crim. P. 30 (c) (8), as appearing in 435 Mass. 1501 (2001), a capital defendant whose "whole case" has already been reviewed by this court pursuant to G. L. c. 278, § 33E — and whose conviction of murder in the first degree has been upheld — must first seek and obtain leave from a single justice of this court, pursuant to the last sentence of § 33E, to appeal from an adverse decision on a postconviction motion. See *Dickerson* v. *Attorney Gen.*, *supra*. As explained in the *Dickerson* case, a sound basis exists for this limitation on a capital defendant's appeal from postconviction motions. *Id.* at 744-745 (holding that "since we have already reviewed the 'whole case' as required by G. L. c. 278, § 33E, the capital defendant justifiably is required to obtain leave of a single justice before being allowed once again to appear before the full court"). See *Dickerson* v. *Latessa*, 872 F.2d 1116, 1120-1121 (1st Cir. 1989) ("We accordingly hold that section 33E's gatekeeper provision does not deny [defendants] the equal protection of the laws"). This court reviews a capital case in its entirety and to the extent that the defendant then seeks additional review, he must first show that there is a "new and substantial" issue that this court could not have considered in the course of plenary review.

The bar for establishing that an issue is "substantial" in the context of the gatekeeper provision of § 33E is not high. It must only be a meritorious issue in the sense of being worthy of consideration by an appellate court. See *Dickerson* v. *Attorney Gen.*, *supra* at 743-744. At the same time, an issue must also be "new" to pass the gatekeeper's inspection. This presents a more significant hurdle. "An issue is not 'new' within the meaning of G. L. c. 278, § 33E, where either it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review. 'The statute requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal.' *Commonwealth* v. *Pisa*, 384 Mass. 362, 365-366 (1981), and cases cited. See *Commonwealth* v. *Gricus*, 317 Mass. 403, 405 (1944) ('Even in a capital case, a party may not

bring up by exceptions to the denial of a motion for a new trial a question of law that he raised or could have raised at trial')." *Commonwealth* v. *Ambers*, 397 Mass. 705, 707-708 (1986). If the grounds advanced by the defendant for the issue "were available . . . at the time of his trial or direct appeal," the issue cannot be considered "new." *Id.* at 708, and cases cited.

A defendant's claim might be "new," for example, if the applicable law was not sufficiently developed at the time of trial or direct appeal, such that the claim could not reasonably have been raised in those proceedings, see *id.*; or if evidence not previously available comes to light. See *Commonwealth* v. *DiBenedetto*, 458 Mass. 657 (2011) (remanding cases for further consideration of new DNA evidence). We now turn to the threshold question before us — whether the issue presented in the defendant's motion for a new trial is "new and substantial."

3. *"New and substantial."* The defendant is entitled to review of the denial of his motion for a new trial at this juncture if and only if he can show that he is raising an issue that is "new and substantial." In his motion he raised an issue regarding his felony-murder conviction that he had not raised previously either at trial, in his direct appeal, or in his petition for rehearing after we had decided the case. For the first time, he argued that a jury should be permitted to determine whether Selby shot Berry of his own accord, acting alone and not as part of the joint venture to search for the thieves and stolen drugs; in other words, that the shooting of Berry may have been wholly separate from, and completely independent of, any predicate felony of armed assault in a dwelling.

This new theory proposes that the homicide did not occur in the course of the felonious enterprise but was another incident entirely, for which the defendant, as a joint venturer in the armed assault in a dwelling, was not liable. But see *Commonwealth* v. *Ortiz*, 408 Mass. 463, 466 (1990) (holding that, for purposes of felony-murder, the homicide and predicate felony "need only to have occurred as part of one continuous transaction"; and that connection is sufficient "as long as [the felony] and the homicide[] took place at substantially the same time and place"). The argument is that if a jury were to find that when Selby shot Berry, he was engaged in a solo act that was

wholly separate from what came before — from the joint venture to find the thieves and the stolen drugs that gave rise to Selby's and Edwards's entry into the apartment and their armed assault of Berry and the others — then the armed assault in the dwelling could not serve as a predicate felony for a felony-murder conviction. In this scenario the homicide would have been a separate, unconnected event from the armed assaults that preceded it.

The issue currently being advanced by the defendant is dubious at best on the evidence that was presented by the Commonwealth in this case. More importantly for present purposes, however, it is not "new" within the meaning of § 33E. The defendant maintains that it is a "new" issue because he identified it only after, and could have identified it only after, this court's plenary review. That is incorrect. The contention that Selby's shooting of Berry was a separate event from the armed assault in a dwelling may well be a *different* theory from anything the defendant has previously argued. Different, however, does not necessarily mean *new*. The claim is not something that was unavailable to the defendant at trial, on appeal, and, after we issued our opinion, at the time of his petition for rehearing. It was something that could have been raised and addressed at those points in the proceedings. See *Commonwealth* v. *Ambers, supra* at 707-708.[6] Whether Selby's act of shooting Berry was a wholly separate act is merely another way of asking if the killing occurred in the course of a joint venture. The defendant does not allege that the applicable law is any different now than at the time of the trial and appeal, or that any new facts have surfaced that might make for a new issue.

In his motion for a new trial, and in this court, the defendant frames the issue as an ineffective assistance of counsel claim. He argues that he received ineffective assistance of counsel because neither his trial nor his direct appellate counsel took steps to challenge the original basis for the felony-murder charge — the armed assault in a dwelling against Berry — or to defend

---

[6]Even with respect to the only predicate felony that the defendant claims was tried — i.e., armed assault in a dwelling against Berry — the defendant might have argued at trial that the homicide was not felony-murder because it did not occur in the course of the felony. He simply did not pursue this theory.

him against a theory of felony-murder based on the armed assault in a dwelling against the others. The ineffective assistance of counsel claim also encompasses the failure of counsel to raise the argument that Selby's shooting of Berry was a separate event, independent of the felonious joint venture. Reframing an omitted issue as an ineffective assistance of counsel claim does not necessarily make it "new," however. See *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). If that were the case, then every claim that was available to the defendant but had been omitted from the trial and direct appeal could be recast in terms of ineffective assistance of counsel; it would then be considered "new" and automatically eligible for collateral appellate review, despite our having reviewed the entire record under § 33E (including claims *not* raised by counsel) in the plenary direct appeal.

On direct appeal, the court considered, as was its duty under G. L. c. 278, § 33E, the whole of the defendant's case. On our own we raised and addressed the merger issue, and in connection with that issue, the so-called bystander assault issue, ultimately deciding that there was no substantial likelihood of a miscarriage of justice because there was ample evidence on which to rest the felony-murder conviction. The very issues that the defendant now raises, under the rubric of ineffective assistance of counsel, are issues we already have considered. To contend that counsel was ineffective in this regard is, in essence, beside the point and ignores the fact that the case (and all of its law and facts, none of which has changed) has already been subjected to plenary review.

The statute's "new and substantial" test does not contemplate revisiting the decision in a capital appeal merely to reconsider issues that were decided in the direct appeal, which the defendant claims were incorrectly decided, or to entertain arguments and theories that could have been, but were not, previously raised by the defendant. In essence, what the defendant asks us to do by revisiting his direct appeal would require creating a judicial exception to the "new and substantial" requirement of § 33E. This is not a case in which it is necessary to consider creating such an exception in order to assure that justice is done. Having considered all of the arguments before us, we are

satisfied that there was no substantial likelihood of a miscarriage of justice, and therefore no error in affirming the defendant's conviction.

4. *Conclusion.* For these reasons, we conclude that the defendant's present theories and claims are not new within the meaning of G. L. c. 278, § 33E. The case is remanded to the county court where an order shall enter denying the defendant's application for leave to appeal.

*So ordered.*