NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13279

COMMONWEALTH  vs.  NYASANI WATT.


Suffolk.     March 8, 2023. – January 11, 2024.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Homicide.  Constitutional Law, Assistance of counsel.  Practice,
    Criminal, Postconviction relief, Assistance of counsel.



Indictments found and returned in the Superior Court
Department on December 21, 2011.

Following review by this court, 484 Mass. 742 (2020), a
motion for a new trial, filed on August 10, 2020, was heard by
Mark D. Mason, J.

A request for leave to appeal was reported by Cypher, J.,
in the Supreme Judicial Court for the county of Suffolk.


Elizabeth Doherty for the defendant.
Elisabeth Martino, Assistant District Attorney, for the
Commonwealth.
Afton M. Templin, Committee for Public Counsel Services,
for youth advocacy division of the Committee for Public Counsel
Services & another, amici curiae, submitted a brief.


BUDD, C.J.  In 2020, this court affirmed Nyasani Watt's

convictions of murder in the first degree and related offenses,

as well as the denials of his motions for a new trial, after plenary review under G. L. c. 278, § 33E (§ 33E).  Commonwealth v. Watt, 484 Mass. 742, 765 (2020).  The defendant subsequently filed another motion for a new trial alleging, for the first time, that his trial counsel slept during critical portions of the trial, constructively depriving him of his constitutional right to counsel.  A Superior Court judge (motion judge), who was not the trial judge, denied the motion without a hearing, and the defendant sought leave to appeal the denial from a single justice of this court pursuant to § 33E.  The single justice reserved and reported this matter to the full court.  For the reasons discussed infra, we reverse the order denying the defendant's motion and remand this matter to the Superior Court for a new trial.[1]

Background.  The evidence presented in the defendant's trial is summarized in Watt, 484 Mass. at 744-745.  Facts concerning the postconviction pleadings and subsequent allegations against trial counsel are taken from the record and from the undisputed findings of the motion judge.

In 2013, the defendant and his codefendant, Sheldon Mattis, were convicted of murder in the first degree for shootings that

---

[1] We acknowledge the amicus brief submitted by the youth advocacy division of the Committee for Public Counsel Services and Citizens for Juvenile Justice.

killed sixteen year old Jaivon Blake and wounded fourteen year old Kimoni Elliott. Watt, 484 Mass. at 744. Following trial, the defendant's trial counsel withdrew, and new counsel filed an appearance as the defendant's appellate counsel (first appellate counsel). The defendant moved for postconviction relief and a new trial based on claims of extraneous juror influence. See id. at 757-761. Although the defendant raised with his first appellate counsel that his trial counsel slept during portions of the trial, first appellate counsel dismissed the issue as unmeritorious and did not investigate it further.

The defendant's first motion, essentially treated as a motion for a new trial, was denied in March 2015, and his subsequent motion for a new trial was denied in October 2017. At the defendant's request, his first appellate counsel withdrew in December 2017. The defendant obtained a second, and his current, appellate counsel (second appellate counsel), who filed a supplemental motion in support of a new trial.[2] This motion was denied in July 2018. The defendant's appeal from his convictions and from the denials of his motions for a new trial were consolidated before this court and received plenary review pursuant to § 33E. On December 10, 2019, after this court heard

---

[2] The supplemental motion raised an ineffective assistance of counsel claim based on trial counsel's failure to investigate a "critical" aspect of a prosecution witness's testimony.

oral argument, second appellate counsel learned for the first time from the codefendant's trial counsel that the defendant's trial counsel had slept during portions of the trial.[3]  Almost six months after oral argument, this court affirmed the defendant's convictions and the orders denying his motions. Watt, 484 Mass. 765.  Approximately two months later, the defendant filed another motion for a new trial, contending that he was deprived of his right to counsel because his attorney was sleeping during critical parts of the trial.  In support of this motion, the defendant submitted his own affidavit as well as affidavits from his second appellate counsel, his codefendant, his codefendant's two trial attorneys, the two trial prosecutors, and his mother.  Each affidavit described the affiant's recollection as to whether trial counsel was observed sleeping during the trial and, if so, when and for how long.[4]

The defendant's affidavit states that trial counsel "fell asleep a number of times during the trial," including during jury selection and the questioning of two witnesses, one possibly being Jeremiah Rodriguez, a key witness for the

_____

[3] On receiving this information, second appellate counsel confirmed its veracity with the defendant and others who were present at the defendant's trial and filed the motion for a new trial that is before this court on appeal.

[4] It was not possible to obtain an affidavit from the defendant's trial counsel as he passed away in June 2019.

prosecution. The defendant's affidavit further recounts that others in the court room, including the trial judge and prosecutor, witnessed trial counsel sleeping during portions of the trial, that trial counsel at one point was snoring, and that trial counsel tried to conceal his fatigued state.

One of the codefendant's two trial attorneys attested that the defendant's trial counsel slept at least once during testimony. The other attorney stated in his affidavit that the defendant's trial counsel closed his eyes several times during the trial, but that he was uncertain whether trial counsel was sleeping.

One of the two trial prosecutors stated in his affidavit that he had observed the defendant's trial counsel "dozing off" on multiple occasions during the trial, and that he recalled one specific instance in which he had to rouse trial counsel to show him a photograph before showing it to a testifying witness. The other trial prosecutor recalled being informed by another attorney at trial that the defendant's trial counsel had nodded off during the examination of one witness.

The codefendant stated in his affidavit that he saw the defendant's trial counsel "sleeping or nodding off" a number of times during the trial and noted two specific instances: during the testimony of an emergency medical technician and during the testimony of the younger brother of one of the victims. The

defendant's mother stated in her affidavit that trial counsel "nodded off to sleep" or "was dozing" at some points during the trial. She further stated that trial counsel appeared to be "sick" and "did not seem alert," and that he had informed her that he had "recently been hospitalized."

The defendant's second appellate counsel recounted in her affidavit that after becoming aware of the allegation, she reached out to the jurors from the trial regarding whether they observed the defendant's trial counsel sleeping. The one juror who responded did not recall anything specific about the defendant's trial counsel. Second appellate counsel spoke with the defendant's first appellate counsel, who confirmed that the defendant did raise "something" about trial counsel "being able to stay awake at trial," but that the defendant's first appellate counsel did nothing with the information because he believed there was no basis to pursue the claim.

The motion judge indicated that he credited the affidavits, all of which corroborated that trial counsel had fallen asleep multiple times during the trial. The motion judge nevertheless denied the defendant's motion for a new trial, concluding that the defendant had waived the claim by failing to raise it on appeal or in a previous motion for a new trial, and that trial counsel's slumber neither rose to the level of structural error nor prejudiced the defendant's case.

Discussion.  1.  Gatekeeper analysis.  Because the defendant raised the issue of his trial counsel sleeping during the trial after this court had heard and decided his direct appeal, we review the appeal from the denial of the instant motion for a new trial only if the defendant presents "a 'new and substantial' issue that this court could not have considered in the course of plenary review."  Commonwealth v. Gunter, 459 Mass. 480, 487, cert. denied, 565 U.S. 868 (2011).  See G. L. c. 278, § 33E.  We conclude that he has done so.

Section 33E, the mechanism by which this court exercises plenary review of all convictions of murder in the first degree, provides this court with "extraordinary powers" to "consider the whole case, both the law and the evidence, to determine whether there has been any miscarriage of justice."  Dickerson v. Attorney Gen., 396 Mass. 740, 744 (1986).  This unique form of review requires our consideration of issues raised by the defendant, as well as issues not raised, "but discovered as a result of our own independent review of the entire record."  Id. Balancing the exercise of our extraordinary powers with the interests of judicial economy and finality, § 33E simultaneously limits a capital defendant's "ability to appeal subsequent postconviction motions" following plenary review.  Id.  Pursuant to § 33E, such a defendant must first obtain leave to pursue an appeal from a single justice of this court, who acts as

gatekeeper to determine whether the defendant "presents a new and substantial question which ought to be determined by the full court."  G. L. c. 278, § 33E.[5]

"The bar for establishing that an issue is 'substantial' in the context of the gatekeeper provision of § 33E is not high."  Gunter, 459 Mass. at 487.  An issue is "substantial" if it is "a meritorious issue in the sense of being worthy of consideration by an appellate court."  Id.  Here, the defendant presents us with a substantial issue, where he alleges that his trial counsel's slumber deprived the defendant of his right to the assistance of counsel throughout his trial.

Whether a defendant presents a "new" issue is a slightly more complex question.[6]  Gunter, 459 Mass. at 487.  "An issue is not 'new' within the meaning of G. L. c. 278, § 33E, where either it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review."  Id., quoting Commonwealth v. Ambers, 397

---

[5] This threshold determination may be made by a single justice or may be reserved and reported to the full court, as occurred in this case.  See Commonwealth v. Johnson, 461 Mass. 1, 2 (2011).

[6] Given the strict finality of gatekeeper determinations, we do not often have occasion to analyze whether claims are "new" as a full court.  A single justice's determination of a new and substantial issue "is final and unreviewable."  Gunter, 459 Mass. at 485.  Thus, unless the gatekeeper function itself is reserved and reported (as it was here), the question would not come before us.

Mass. 705, 707 (1986). In interpreting § 33E, we generally have "require[d] that the defendant present all his [or her] claims of error at the earliest possible time." Gunter, supra, quoting Ambers, supra. Accordingly, we have rejected gatekeeper petitions where a defendant raises no new facts and only presents "subtle shift[s]" in his or her theory of the case, Commonwealth v. Watkins (No. 1), 486 Mass. 801, 807 (2021),[7] and where previously litigated claims are repackaged as claims of ineffective assistance of counsel, see Gunter, supra at 490 ("Reframing an omitted issue as an ineffective assistance of counsel claim does not necessarily make it 'new'").

Here, because no one contemporaneously raised the fact that trial counsel was sleeping, the error was not apparent in the trial record. Contrast Trigones v. Attorney Gen., 420 Mass. 859, 861 n.5 (1995) (defendant's gatekeeper petition properly denied where defendant failed to demonstrate that claims were not evident from record on direct appeal). Moreover, first appellate counsel rejected the claim as nonviable when the defendant brought the matter to his attention and therefore did

_____

[7] See also, e.g., Gunter, 459 Mass. at 489 (defendant did not raise "new" issue where, although presented as "different theory," defendant did not allege change in applicable law or any new facts); Commonwealth v. Pisa, 384 Mass. 362, 367 (1981) ("The legal theories, constitutional or otherwise, underlying [the defendant's] three other claims were available at the time of [the defendant's] first or second appeal . . .").

not raise it in the defendant's direct appeal.  As a result of first appellate counsel's ineffective assistance, this court was not able to consider the claim under its plenary review, despite the efforts of the defendant.[8]  In these unique circumstances, we conclude that the defendant has presented a "new" question under § 33E, because this claim was not available to the defendant in prior proceedings.  To hold otherwise would undermine the core purpose of § 33E's framework guaranteeing capital defendants exclusive access to plenary review "to determine whether there has been any miscarriage of justice."  Dickerson, 396 Mass. at 744.

2.  Merits of appeal.  Having determined that the defendant meets the § 33E gatekeeper criteria, we turn to a review of the denial of the defendant's motion for a new trial.  Where, as here, the motion judge was not the trial judge and the evidence

---

[8] We note that the defendant's current motion did not allege that his first appellate counsel provided ineffective assistance of counsel for failing to investigate the claim that trial counsel had been sleeping during the trial.  Although the question has not been put before us, the failure to investigate an alleged error of this magnitude clearly was unreasonable. See Commonwealth v. Tavares, 491 Mass. 362, 366 (2023), quoting Strickland v. Washington, 466 U.S. 668, 691 (1984) (counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary"). Accordingly, where the defendant raised the issue with his first appellate counsel who refused to pursue it, we do not fault the defendant for failing to include this claim on direct appeal. In these unique circumstances, it would be unreasonable to require the defendant to have done more.

provided was purely documentary, our review is de novo.  See
Commonwealth v. Lykus, 451 Mass. 310, 326 (2008).

A judge "may grant a new trial at any time if it appears
that justice may not have been done."  Mass. R. Crim. P. 30 (b),
as appearing in 435 Mass. 1501 (2001).  The defendant argues
that he constructively was deprived of his right to counsel
under the Sixth Amendment to the United States Constitution and
art. 12 of the Massachusetts Declaration of Rights because his
attorney was sleeping during the defendant's trial.[9]  Assessing
the merits of the defendant's motion, we determine that a
defendant constructively is deprived of his or her
constitutional right to counsel under art. 12 where trial
counsel sleeps for a significant portion or during an important
aspect of trial.

a.  Legal framework.  It is well established in the
Commonwealth, as in Federal jurisdictions, that a person may be
deprived of counsel in certain circumstances, even though
counsel is present physically.  See United States v. Cronic, 466
U.S. 648, 659 n.25 (1984) (constitutional error found, without
any showing of prejudice, where counsel was present but was

---

[9] Article 12 states in relevant part that "every subject
shall have a right . . . to be fully heard in his defense by
himself, or his coun[sel] at his election."  The Sixth Amendment
provides that "[i]n all criminal prosecutions, the accused shall
enjoy the right . . . to have the [a]ssistance of [c]ounsel for
his defen[s]e."

"prevented from assisting the accused during a critical stage of the proceeding").  See also Powell v. Alabama, 287 U.S. 45, 57-59 (1932) ("defendants were not accorded right of counsel in any substantial sense" when counsel was appointed on first day of trial for capital offense without preparation or sufficient time to advise defendants or prepare defense); Commonwealth v. Dew, 492 Mass. 254, 263-267 (2023) (defendant constructively denied counsel where counsel was found to have actual conflict of interest).  We have not had occasion to consider the point at which an attorney's slumber during trial results in deprivation of counsel requiring reversal.  Thus, we look for guidance to the Federal circuit courts that have addressed this question with respect to the Sixth Amendment.[10]

Notably, although those courts agree as a general matter that a trial counsel's slumber constructively may deny defendants their right to counsel such that a new trial is warranted, each sets forth slightly differing conceptions of when that occurs.  The United States Courts of Appeals for the Fourth, Fifth, Sixth, and Ninth Circuits focus on whether

---

[10] Although we review and consider the available Federal precedents that speak to the meaning of the Sixth Amendment in order to interpret art. 12, our decision today neither rests on nor is "interwoven with the [F]ederal law."  Michigan v. Long, 463 U.S. 1032, 1040 (1983).  See id. at 1041 (Federal cases "used only for the purpose of guidance" do not negate "separate, adequate, and independent grounds" of State court decision).

counsel slept for a substantial portion of the trial. See United States v. Ragin, 820 F.3d 609, 612 (4th Cir. 2016) ("a defendant is deprived of his Sixth Amendment right to counsel when counsel sleeps during a substantial portion of the defendant's trial"); Muniz v. Smith, 647 F.3d 619, 623-626 (6th Cir. 2011), cert. denied, 565 U.S. 1214 (2012) (recognizing that denial of counsel with presumed prejudice where "attorney slept through a substantial portion of the trial"); Burdine v. Johnson, 262 F.3d 336, 341 (5th Cir. 2001), cert. denied, 535 U.S. 1120 (2002) ("a defendant's Sixth Amendment right to counsel is violated when that defendant's counsel is repeatedly unconscious through not insubstantial portions of the defendant's capital murder trial"); Javor v. United States, 724 F.2d 831, 833 (9th Cir. 1984) ("when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary"). Meanwhile, the United States Court of Appeals for the Second Circuit focuses on whether counsel was unconscious "at critical times," a consideration that the Fifth Circuit has also discussed. Tippins v. Walker, 77 F.3d 682, 687 (2d Cir. 1996) (at trial, "when counsel [was] unconscious at critical times" or "repeatedly unconscious . . . for periods of time in which defendant's interests were at stake," prejudice may be

presumed).  See Burdine, supra at 349 (fact that counsel slept during "critical stages of trial" significant).

As discussed infra, based on our review of the Federal cases that address sleeping counsel, we conclude that under art. 12, a deprivation of counsel occurs when counsel sleeps for a significant portion of trial or sleeps through an important aspect of trial.

i.  Significant portion of trial.  Whether counsel slept for a significant portion of the trial depends on, but is not limited to, considerations of the duration and frequency of counsel's sleeping.  See Ragin, 820 F.3d at 622 n.11.  For example, in Ragin, the Fourth Circuit held that no separate showing of prejudice was necessary where counsel slept "[f]requently . . . almost every day . . . morning and evening" for "'[thirty] minutes at least' at a time."  Id. at 613, 622-623.  In Tippins, the Second Circuit held that, even where it could not be determined precisely when or for how long counsel slept, no showing of prejudice was required where it was well supported that counsel slept every day at trial and "was repeatedly unconscious at trial for periods of time in which

[the] defendant's interests were at stake."[11]  Tippins, 77 F.3d

at 687.

Under this standard, a defendant might prevail regardless

of the demonstrated importance of the particular times at which

counsel slept, if the duration and frequency of counsel's

sleeping was significant in and of itself.  Although less

frequent or shorter periods of unconsciousness at trial may

support a claim of structural error, mere momentary lapses in

attention or consciousness are insufficient.[12]  See Tippins, 77

---

[11] In Tippins, the court's analysis also included that
counsel slept during critical testimony of a codefendant and at
least one witness and that, on at least one occasion, the trial
judge stopped the trial to instruct counsel "not to sleep any
further, [and] that he should be paying attention."  Tippins, 77
F.3d at 687.

[12] Such claims still may be brought under the traditional
ineffective assistance of counsel framework.  See Strickland,
466 U.S. at 691-692; Commonwealth v. Saferian, 366 Mass. 89, 96
(1974).  Similarly, broad claims of a condition or behavior by
counsel that could cause serious lapses in attentiveness or
unconsciousness are best suited for review as claims of
ineffective assistance requiring a defendant to demonstrate
actual prejudice resulting from demonstrated, deficient
behavior.  See, e.g., Bellamy v. Cogdell, 974 F.2d 302, 308 (2d
Cir. 1992), cert. denied, 507 U.S. 960 (1993) ("given the
varying effects health problems can have on an individual's
ability to function, claims of ineffective assistance based on
attorney illness are best suited to the fact-specific prejudice
inquiry mandated by Strickland"); Smith v. Ylst, 826 F.2d 872,
875-876 (9th Cir. 1987), cert. denied, 488 U.S. 829 (1988)
(generalized claim of attorney's mental illness evaluated under
ineffective assistance framework because "mere existence of a
loosely described mental illness or condition cannot be assumed
to affect legal proceedings unless the condition manifests
itself in courtroom behavior").

F.3d at 688 ("the appearance of 'sleeping' may cover a range of behavior. Lawyers may sometimes affect a drowsy or bored look to downplay an adversary's presentation of evidence"); Commonwealth v. Keaton, 36 Mass. App. Ct. 81, 87 (1994) ("Meditation may be mistaken for somnolence"). But see Tippins, supra at 689 ("The point is well taken that consciousness and sleep form a continuum, and that there are states of drowsiness that come over everyone from time to time during a working day, or during a trial, for that matter. The record here demonstrates that [trial attorney] was actually unconscious"). Rather, the core inquiry focuses on noticeable and meaningful lapses of attentiveness so significant throughout the trial that "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Ragin, 820 F.3d at 620, quoting Strickland v. Washington, 466 U.S. 668, 696 (1984).

ii. Important aspect of trial. Even if a defendant cannot demonstrate that counsel slept for a significant portion of the entire trial, prejudice may be presumed where a defendant demonstrates that counsel slept through an important aspect of trial. In so holding, we again draw support from the Federal circuit courts, which have taken into consideration the significance of the particular events through which counsel slept.

For instance, in Tippins, 77 F.3d at 689-690, the Second Circuit presumed prejudice where trial counsel, in addition to missing parts of the testimony of other prosecution witnesses, was found to have slept through "half" of a codefendant's testimony and "two-thirds" of the testimony of a confidential informant -- "two witnesses of undeniable importance to the prosecution of [the defendant]."  In Burdine, 262 F.3d at 349, the Fifth Circuit held that the defendant was entitled to a presumption of prejudice where defense counsel repeatedly slept "through not insubstantial portions" of trial during which the prosecution introduced evidence and examined witnesses adverse to the defendant.  The Fifth Circuit characterized these moments as comprising the "critical guilt-innocence phase of [the defendant's] capital murder trial."  Id.  By comparison, the Sixth Circuit found that no presumption of prejudice was warranted where a single juror recalled that defense counsel slept through a "brief" period of the defendant's cross-examination.  Muniz, 647 F.3d at 624.

In suggesting that courts assess the importance of any given aspect of trial, we are mindful of the fact that the entire trial itself may be considered to be a "critical stage" where a defendant's Sixth Amendment and art. 12 rights attach. See Commonwealth v. Neary-French, 475 Mass. 167, 170-172 (2016). We emphasize that our ruling today does not augment, reduce, or

even rely on our existing body of caselaw identifying "critical stages of the prosecution." Id. at 170, 173 ("The term 'critical stage' is a term of art and only refers to [those] actions and events postindictment or arraignment" at which defendant's right to counsel attaches).[13] Rather, the standard we adopt today for determining whether a constructive deprivation of counsel has occurred at trial affirms that which already may be intuitive -- that there is a distinction between those portions of trial where unremarkable, ancillary evidence is being presented versus when direct evidence of guilt or innocence is being presented, and that the line between the two must be assessed on a case-by-case basis. And although those distinctions may speak to the "magnitude" of constitutional error at play, Commonwealth v. Valentin, 470 Mass. 186, 196 (2014), quoting Cronic, 466 U.S. at 659, acknowledging such a distinction for the limited purpose of determining whether a trial counsel's sleeping constitutes structural error does not diminish the extent to which a defendant's foundational right to counsel applies during critical stages of the proceedings, such as trial.

---

[13] This separate body of law is useful primarily to decipher which moments leading up to, surrounding, and following trial, in addition to the trial itself, are "critical" and require counsel's presence.

We are convinced that this dual approach to considering claims of sleeping counsel provides a proper basis to determine whether the defendant constructively was denied counsel under art. 12.  Although any slumber by counsel during trial is distressing and detrimental, counsel's constructive absence during either a significant portion of trial or an important aspect of trial so offends the constitutional protections surrounding the right to assistance of counsel that it renders the entire adversary process "presumptively unreliable" and creates an uncurable error, "even if the error was ultimately harmless."  Valentin, 470 Mass. at 196, quoting Cronic, 466 U.S. at 659.

This approach is appropriate in light of the unique evidentiary hurdles facing defendants whose rights to counsel have been infringed due to a deprivation of counsel.  Indeed, when counsel is absent either for a significant portion or during an important stage of trial, "the evil lies in what the attorney does not do, and is . . . not readily apparent on the record."  Javor, 724 F.2d at 834, quoting Cooper v. Fitzharris, 586 F.2d 1325, 1332 (1978), cert. denied, 440 U.S. 974 (1979).

b.  Application.  Here, the affidavits submitted by the defendant "provide a sufficient factual basis" to support the conclusion that trial counsel slept for a significant portion of

trial, and likely slept through an important aspect of trial. Commonwealth v. Sylvain, 473 Mass. 832, 839 (2016).

Based on the affidavits, multiple people had observed trial counsel sleeping during trial. The defendant asserts that trial counsel slept recurrently and during significant moments, such as jury selection and the testimony of two witnesses, possibly including Jeremiah Rodriguez, a central prosecution witness. Codefendant Mattis confirmed that the defendant's trial counsel slept repeatedly during trial, naming two specific occasions, including the testimony of an emergency medical technician and the victim's younger brother. One of the prosecutors at trial had contemporaneously discussed with a colleague and one of codefendant's counsel that trial counsel slept on several distinct occasions, including one where the prosecutor had to rouse trial counsel to review a photograph before it was shown to the testifying witness. One attorney for the codefendant confirmed that trial counsel slept at least once during testimony; the other attorney for the codefendant stated that trial counsel's eyes were closed several times throughout the trial. The defendant's mother also confirmed the repetitiveness of trial counsel's sleeping during trial. Notably, none of the affiants provided statements to the contrary.

Together, these affidavits not only "cast doubt" on whether the defendant was deprived of his constitutional right to

counsel, but also demonstrate as much (citation omitted).

Commonwealth v. McWilliams, 473 Mass. 606, 622-623 (2016).  See

Commonwealth v. Gagliardi, 418 Mass. 562, 572 (1994), cert.

denied, 513 U.S. 1091 (1995) (no abuse of discretion where judge

decided motion for new trial on memorandum of law without

holding evidentiary hearing where only substantial issue raised

was question of law, not fact).  First, we note that this is not

a case where we only have a defendant's self-serving affidavit

in support of the defendant's claim.  See Commonwealth v.

Goodreau, 442 Mass. 341, 351 (2004).  To the contrary, the

defendant submitted affidavits from both sides of the aisle, all

of which corroborate the defendant's claim that trial counsel

was sleeping throughout trial.  See Ragin, 820 F.3d at 621

("every witness who testified stated that [trial counsel for the

defendant] was asleep, appeared to be asleep, or was 'nodding

off' at some point" during trial).  Second, as the affiants'

descriptions of when trial counsel slept varied, with some

accounts more specific than others, we cannot discount the

possibility that each account represents a separate occasion

during which trial counsel was asleep.  See id. at 621-622

(error to "fail[] to consider the likely possibility that each

witness saw [trial counsel] asleep or nodding off on different

occasions").  Moreover, the fact that the trial judge neither

contemporaneously addressed the issue nor provided an affidavit

as to the defendant's claim on appeal is not dispositive. See id. at 622 (rejecting argument that lack of remediation or admonishment by judge on record suggested that trial counsel was not asleep during trial).[14]

Based on the uncontested affidavits provided by the defendant, "we find it impossible not to conclude" that trial counsel at least slept through a significant portion of the trial, and likely through an important part of trial, i.e., Jeremiah Rodriguez's testimony.[15] Ragin, 820 F.3d at 622. Thus, we conclude that the defendant was deprived of his right to counsel under art. 12.

c. Structural error and substantial risk of miscarriage of justice. Having concluded that the defendant was deprived of his right to counsel under art. 12, we next consider whether the error entitles the defendant to a new trial.

---

[14] Similarly, we cannot conclude that any sleeping by trial counsel could not have been significant if neither the Commonwealth nor the trial judge contemporaneously addressed the issue on the record. Cf. Tippins, 77 F.3d at 690 ("we cannot count on a trial judge to serve as the defense lawyer's alarm clock whenever matters arise that touch the client's interest").

[15] The claim that trial counsel slept through Jeremiah Rodriguez's testimony arguably is less conclusive from the affidavits than the fact that trial counsel was repeatedly asleep for a significant portion of the trial. However, we note that the potential veracity of the claim that a trial counsel was asleep during the Commonwealth's presentation of critical evidence against a defendant would suffice as a separate basis to determine structural error under the disjunctive standard we recognize today.

Deprivation of counsel amounts to structural error, i.e., error that affects the "framework within which the trial proceeds, rather than simply . . . the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991). Because structural error generally "render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence," Commonwealth v. Hampton, 457 Mass. 152, 163 (2010), quoting Washington v. Recuenco, 548 U.S. 212, 219 (2006), preserved claims of structural error, if substantiated, result in automatic reversal, Commonwealth v. Williams, 481 Mass. 443, 454 (2019). However, unpreserved claims of error -- even those that are structural in nature -- are reviewed to determine "whether the error created a substantial risk of a miscarriage of justice." Commonwealth v. Francis, 485 Mass. 86, 88 n.1, 102-103 (2020), cert. denied, 141 S. Ct. 2762 (2021).

To avoid waiver, a defendant "must raise a claim of error at the first available opportunity" (citation omitted). Commonwealth v. Morganti, 467 Mass. 96, 102-103, cert. denied, 574 U.S. 933 (2014).[16] Here, the motion judge concluded that the

---

[16] Although our analysis of waiver invokes similar considerations to our analysis of newness under § 33E, namely, whether the defendant could have raised a claim sooner, waiver is a matter distinct from the gatekeeper query. See, e.g., Francis, 485 Mass. 94, 104-106 (defendant raised new and substantial issues satisfying § 33E but had waived claim of error).

defendant waived his claim by failing to investigate and raise the claim prior to his direct appeal.  See Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501 (2001).[17]  We need not determine whether the motion judge is correct on this point because, as discussed infra, we conclude that the error created a substantial risk of a miscarriage of justice.

In assessing whether an error poses a substantial risk of a miscarriage of justice, we consider the nature of the error, the strength of the Commonwealth's case against the defendant, and "whether the error is 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error.'" Commonwealth v. Smith, 460 Mass. 385, 396 (2011).  Additionally, the United States Constitution requires reviewing courts, at the very least, to vacate where the defendant has shown, despite waiver, that the error "led to a fundamentally unfair trial." Weaver v. Massachusetts, 582 U.S. 286, 304-305 (2017).

---

[17] Rule 30 (c) (2) states:

"All grounds for relief claimed by a defendant under subdivisions (a) and (b) of this rule shall be raised by the defendant in the original or amended motion.  Any grounds not so raised are waived unless the judge in the exercise of discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion."

In our view, the deprivation of counsel at trial is the type of structural error that inherently raises serious concerns whether the trial itself was "an unreliable vehicle for determining guilt or innocence."  Francis, 485 Mass. at 102, quoting Neder v. United States, 527 U.S. 1, 9 (1999).[18]  A defendant whose attorney is unconscious and thereby constructively absent for significant portions of the proceedings or during an important part of the proceedings is denied the right to "require the prosecution's case to survive the crucible of meaningful adversarial testing," Cronic, 466 U.S. at 656, and the right to "consult with [his or her] attorney or receive informed guidance from [his or her attorney] during the course of the trial" (citation omitted), Ragin, 820 F.3d at 620.[19]  Given the unique nature of absentee counsel, it

___

[18] Not every structural error poses a substantial risk of a miscarriage of justice.  See, e.g., Francis, 485 Mass. at 107 (no substantial risk despite denial of right to counsel of choice); Commonwealth v. Robinson, 480 Mass. 146, 154-155 (2018) (substantial risk analysis to be used where structural error of denial of right to public trial found).

[19] In the proceedings below, the motion judge found no substantial risk, relying in part on the fact that the defendant's theory of defense was aligned with that of his codefendant, whose two attorneys were not alleged to have been asleep at any time during trial.  This was an erroneous legal conclusion.  The right to counsel is a fundamental constitutional right "accorded to every defendant." Commonwealth v. Appleby, 389 Mass. 359, 366, cert. denied, 464 U.S. 941 (1983).  While codefendants can consent to being

would make little sense to require further proof of specific prejudice beyond the absence itself to demonstrate a substantial risk of a miscarriage of justice, where the absence endures for a significant portion or through an important aspect of the trial.  See Tippins, 77 F.3d at 687 ("Of course, the buried assumption in our Strickland cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse.  But that is an assumption we cannot make when counsel is unconscious at critical times").  See also id. ("Under these circumstances . . . there is little difference between saying that prejudice will be presumed and saying that prejudice has been demonstrated").

Our judicial authority to order a new trial pursuant to Mass. R. Crim. P. 30 (b) is predicated on the "fundamental principle" that "the valuable finality of judicial proceedings must yield to our system's reluctance to countenance significant individual injustices."  Commonwealth v. Brescia, 471 Mass. 381, 388 (2015).  Even "meticulous efforts to do justice" can be

---

represented by the same counsel, see Mass. R. Prof. C. 1.7, as amended, 490 Mass. 1303 (2022), the alignment of common interests or theories of defense is not the harm at issue here. Rather, a defendant whose attorney is asleep is deprived of the ability to "consult with his attorney during the trial" or receive "a lawyer's guidance" during "the trial process." Geders v. United States, 425 U.S. 80, 88-89 (1976).  That is not an ill mitigated by the presence of some other attorney, even one advancing a similar defense.

frustrated by "extraordinary fact patterns." Id. at 391. Here, where defense counsel fell asleep repeatedly at trial, and potentially during at least one crucial witness's testimony, we do not have confidence that justice was done. Cf. Ragin, 820 F.3d at 624 ("[The defendant] was thrown unarmed into the arena to face the gladiators without benefit of the assistance of counsel to which he had an absolute right. As a result, [the defendant's] trial was not a confrontation between adversaries in which any reasonable person can have confidence"); Tippins, 77 F.3d at 690 ("In short, there is simply no basis for the hope that [defense attorney] was functioning as a lawyer during critical times at trial"); Javor, 724 F.2d at 834 ("Prejudice is inherent in this case because unconscious or sleeping counsel is equivalent to no counsel at all").

Conclusion. The defendant constructively was denied the right to counsel in violation of art. 12, and this denial created a substantial risk of a miscarriage of justice. The order denying the defendant's motion for a new trial is reversed. The defendant's convictions are vacated, the verdicts are set aside, and the matter is remanded to the Superior Court for a new trial.

So ordered.